# Tubb *v.* Fort.

*Bill in Equity to recover Rent.*

1. *Rent; when passes with reversion.*—Rent is an incident to the reversion, and whoever is entitled to the reversion when the rent falls due, is also entitled to the rent, unless it was reserved from the grant, or has been previously severed; and this, whether the assignment of the reversion is by act of the lessor, or by operation of law.

2. *Same.*—The purchaser, under a decree in chancery of the lessor's lands, is entitled to the rent afterwards falling due, as against the assignee of the tenant's obligation to pay, whose interest was acquired pending suit, although the claim of the assignee would prevail against the lessor; and attornment on the part of the tenant is not necessary to perfect the right of the purchaser.

3. *Same; when bill in equity will not lie for recovery of.*—Where the right to recover rent is legal, and there is an adequate legal remedy, a court of chancery should not, in the absence of some equitable ground, take jurisdiction to decree its recovery.

4. *Adequacy of legal remedy; when will not defeat relief in equity.*—Where the subject matter of the suit does not lie without the jurisdiction of a court of equity,—as a bill to recover rents—and the parties go on to a hearing and decree on the merits, without raising the objection that the remedy at law is adequate, the objection is waived, and can not be urged on appeal.

5. *Demurrer; what not considered.*—A demurrer for want of equity, is a mere general demurrer, which the statute forbids the court to entertain.

APPEAL from Perry Chancery Court.

Heard before Hon. CHARLES TURNER.

The appellee, Sarah J. Martin, who, after the institution of the suit, intermarried with one Fort, filed this bill against Tubb, Jeffries, and certain persons composing the firm of Morey, Watson & Dunlap, to recover certain rents.

The case made by the bill, answers and testimony, may be thus stated: The lands belonged, originally, to appellee's husband, who sold them to Jeffries, giving him bond to convey title on payment of purchase-money, and putting him in possession in the year 1863. Martin brought ejectment against Jeffries, who had not paid for the lands in full, to recover possession; and Jeffries filed his bill in chancery to enjoin the prosecution of the suit, and for an account of the amount due, &c. Pending the suits Martin died, leaving a last will and testament, which was duly proved and admitted to probate, whereby he gave and devised all his realty to his wife, said Sarah J., who was also appointed executrix. The chancery suit was revived rgainst said Sarah J., and such proceedings afterwards had therein, that a decree of sale of the lands was made for the unpaid purchase-money. Pursuant to this order, the register sold the lands at public outcry, on the first Monday in July, 1871, and said Sarah J. became the purchaser, receiving a conveyance from the register, and the sale was confirmed by the court at its succeeding Fall term.

Jeffries, while the chancery suit was pending, and on the 7th day of January, 1871, leased the premises for one year to Tubb, who, in payment of rent and for the use of certain mules furnished by Jeffries, agreed to deliver to Jeffries, in December following, eight bales of cotton. About the first day of March, 1871, Jeffries transferred Tubb's obligation to Morey, Watson & Dunlap, as collateral security for a debt Jeffries owed them.

The day before the filing of the bill (November 1st, 1871), Tubb delivered eight bales of cotton, grown on the premises, to Morey, Watson & Dunlap, they giving him an obligation to indemnify him in making the payment to them; and this cotton was afterwards sold by that firm. The testimony tends to show that neither Tubb nor Morey, Watson & Dunlap, had any actual notice of Mrs. Fort's claim at the time Tubb's

obligation was transferred to them; but it shows that all of them knew of it before the cotton was delivered.

The bill alleged, that Tubb was insolvent, and Morey, Watson & Dunlap were about to remove the crops, &c., and that if complainant should lose her lien, she could not collect the rent out of Tubb, and that both of them well knew her rights in the premises, but combined and confederated to defeat her just claim for rent, and she prayed a seizure of the crop, to an amount sufficient to pay the yearly rent, which was alleged to be of the value of $750; that the conflicting claims of the parties be settled; that an account be taken of the amount of rent due from Tubb, and also of the value of the part of the crop received by Morey, Watson & Dunlap, and, if necessary, that they be required to pay the same to complainant, and for general relief.

The defendants demurred to the bill, on the ground that "the bill of complaint contains no equity;" and because of "a misjoinder of parties in making Jeffries a party." This demurrer seems not to have been brought to the attention of the Chancellor, and no ruling was made thereon. A decree *pro confesso* was taken as to Jeffries, and Tubb and Morey, Watson & Dunlap answered, but in neither of the answers was incorporated any demurrer, nor was any mention made of the demurrer filed. The answers denied complainant's right to the rents; insisted on the rightfulness of Tubb's payment to Morey, Watson & Dunlap; denied notice of complainant's rights, and insisted that the rental value of the lands was much less than the amount claimed in the bill; and the testimony taken by the respondents related solely to these matters.

The cause was submitted on bill, answers, decree *pro confesso* and testimony, and the Chancellor decreed that complainant was entitled to a landlord's lien on the crop grown on the premises for the year 1871, superior to the claim of Morey, Watson & Dunlap, and that the latter had removed a part of the crop, with full notice of complainant's lien, and thereupon referred it to the register to ascertain and report what was the rental value of the premises for the year 1871, and the amount of the obligation given by Tubb, including the value of the hire of certain mules and implements, as well as the value of the rent. The register, after the examination of a number of witnesses, whose testimony he returned with his report, reported that the rental value of the premises was $472.50; and the Chancellor overruled an exception to it, on the ground that it placed the value of the rent too high, confirmed the report, and rendered a final decree against Tubb for that amount and taxed him with costs.

[Tubb v. Fort.]

The decree granting relief, the overruling of the exceptions to the register's report, and the final decree against Tubb, are now assigned as error.

W. B. MODAWELL, for appellant.—Jeffries transferred the note to Morey, Dunlap & Co. before appellee had any right to it, and the latter paid valuable consideration for it. Besides this, appellee had a complete remedy at law, and should have pursued it.—Revised Code, § 2961 ; 15 Ala. 166 ; 46 Ala. 304 ; 12 Ala. 155.

PETTUS, DAWSON & TILLMAN, *contra.*

BRICKELL, C. J.—There can be no proposition more firmly established in the law, than that rent is an incident to the reversion ; and that whoever is entitled to the reversion, at the time the rent becomes payable, is of right entitled to it, unless it is reserved from the grant, or has been previously severed.—*Pope v. Harkins*, 16 Ala. 323 ; *English v. Key*, 39 Ala. 113 ; *Bank of Pennsylvania v. Wise*, 3 Watts, 394. It is not material whether the assignment of the reversion is by the act of the lessor, or by operation of law, the rent passes to the assignee. The principle is thus stated in 2 Coke, (Butler & Hargroves,) p. 215, § 348: "Both assignees in deed and assignees in law shall have the rent, because the rent being reserved of inheritance to him and his heirs, is incident to the reversion and goeth with the same." Though at one time, it was held, if during the term the lessee obtained the fee of the lessor, under a conveyance silent as to the rent, the rent for the remainder of the term only was extinguished. *Martin v. Bradley*, 3 Stew. 50. The later authorities hold, the transfer of the reversion carries the rent to the assignee, though it is not expressly mentioned, and there can be no apportionment of it between the lessor and the assignee.— *English v. Key, supra.*

We regard it, therefore, as undeniable, that the appellee, by the sale and conveyance to her of the lands, under the decree of the court of chancery against the lessor, became entitled to the rent accruing from the tenant, payable at the expiration of the year. She was vested with the reversion, and that carried the rent as an incident, and she could have pursued all the remedies for its recovery the lessor could have pursued, if his estate in the premises had not been terminated. The transfer to Morey, Watson & Dunlap of the agreement or obligation of the tenant for the payment of the rent, before it was due and payable, was doubtless binding on the lessor, and if his estate had remained undetermined

until the rent was actually payable, would have entitled the assignees to its recovery. But it is invalid and inoperative against the appellee. That assignment was made pending the suit in chancery, which involved the title to the land, and resulted in the decree for its sale, under which the appellee became the purchaser. The suit was notice to the tenant, and to the assignees of his obligation or agreement for the payment of the rent, of the infirmity of the lessor's title to the premises, and of the superiority of the lien asserted by the appellee, and they are bound by the decree as if they had been parties to the suit.—*Chaudron v. Magee*, 8 Ala. 570 ; *Center v. P. & M. Bank*, 22 Ala. 743 ; *Bolling v. Coster*, 9 Ala. 921. The appellee, by her purchase at the sale under the decree in that suit, if the lessor had not made the lease, and had remained in possession, would have been entitled to immediate possession. The lease did not prevent the entire estate of the lessor from passing to the appellees. It was consequently out of her lands the rents issued, and she was entitled to them. An alienation of the reversion pending the suit, would have been subject and subordinate to the decree subsequently rendered therein. The pendancy of the suit restrained not only the power of the tenant to alienate the reversion, but his power to sever the accruing rent from the lands, so as to defeat or impair the rights of the purchaser under the decree.—Menough's Appeal, 5 Watts & Serg. 432. The assignees of the rent, therefore, are affected by the decree, as they would be if they were assignees of the reversion.—Taylor's Land. & Ten. §§ 446–47.

Though attornment by the ancient common law, was necessary to create the relation of landlord and tenant, when, pending the term, there was an alienation or assignment of the demised premises, the statute now dispenses with it, and the conveyance itself creates the relation, protecting the tenant only against the payment of rent, he may have paid to his original landlord without notice of it.—Revised Code, § 1568.

It is insisted for the appellants, that if the appellee was entitled to the rent, she had an adequate remedy at law for its recovery, and consequently the Chancellor erred in taking jurisdiction of the case, and decreeing her relief. Whatever may have been the doubts at one time entertained, it seems now to be settled, that if the right to recover rent is legal, not equitable, and there is an adequate remedy at law, courts of equity will not take jurisdiction to decree its recovery. If, however, the remedy · at law is inadequate or doubtful, or there is a peculiar equity, the court will take jurisdiction.—1 Story's Eq. § 684 *b. c.* We do not deem it necessary to in-

quire whether the bill discloses the inadequacy of the reme-
dy at law, or a peculiar equity, which would justify the inter-
ference of the court.

The appellants did not, in the Court of Chancery, in any
form, either by demurrer, motion to dismiss, or by answer,
object that the remedy of complainant was at law. A de-
murrer seems to have been interposed at one time, assigning
only two causes—that there was no equity in the bill, and
that the lessor, Thomas J. Jeffreys, was improperly joined
as a defendant. The first is a mere general demurrer, the
statute prohibits from being entertained, and the second, if
well taken, was not a cause of demurrer for any of the de-
fendants, except Jeffreys, and being taken by all, could not
have been allowed. This demurrer was, however, waived by
the subsequent answer of the defendants, in which it was not
incorporated, nor does it seem ever to have been called to
the attention of the Chancellor. The answers litigate the
right of the complainant to the rent, and controvert its
amount. This was the whole scope of the contention in the
Chancery Court. In this court, for the first time, after liti-
gation on the right and extent of recovery has been decided
adversely to them, the appellants urge the remedy of the
complainant was at law, and not in equity. In answer to
the same objection, made to a bill for the recovery of rent,
for the first time, at the hearing, Chancellor KENT said : "If
the defendant intended to have objected to the jurisdiction
of the court, he should have demurred to so much of the bill
as prayed relief. It is a general rule, that he comes too late
with his objection at the hearing, after he has, by his answer,
put himself upon the merits."—*Livingston v. Livingston*, 4
Johns. Ch. 287. The general rule of practice in courts of
equity, has long been settled, that if the subject matter of the
suit is not without the jurisdiction of a court of equity, and
there may be circumstances under which it would be com-
petent for the court to grant relief, the objection that there
is an effectual and complete remedy at law, must be taken by
demurrer, and comes too late at the hearing.—1 Dan. Ch. Pr.
550, (n. 3). In its very nature, the objection is of that class,
which ought to be taken in the earliest stage of the suit, be-
fore costs have accumulated, or by the lapse of time irrepar-
able injury may result, by remitting the complainant to a
legal remedy, which has in fact become unavailing. Under
our rules of practice, the equity of the bill is a subject of
dispute, at any time before final decree, on a motion to dis-
miss, by any defendant, whether he has answered, or is in
contempt for want of answer, unless he has demurred for
want of equity, and his demurrer has been overruled.—1

Brick. Dig. 731, §§ 1342–1349. The case of *Andrews v. McCoy*, 8 Ala. 920, as explained in the subsequent case of *Lockhard v. Lockhard*, 16 Ala. 423, presented the precise question we are considering. The bill stated the cause of action in the alternative, and one of the alternatives, if true, was fatal to a recovery. No objection was made to it in the court of chancery, and the proof showing a right of recovery, this court, in answer to an objection to the sufficiency of the bill, said : "If the bill had been demurred to for this cause, and the objection distinctly presented, it could have been obviated by an amendment. Instead of pursuing this course, the plaintiffs in error submitted to answer the bill, set up their title, and litigate their rights, without objection, and it would be grossly unjust to the complainant, to permit them now, after the cause has been heard on its merits, to raise an objection, which by their previous conduct they had waived in the primary tribunal. Such has been the constant course of decision in this court for some years." In *Lockhard v. Lockhard, supra,* the bill was filed by one tenant in common against his co-tenant for an account of rents, disclosing that the complainant and the defendant had agreed the defendant should occupy the premises at a stipulated rent. The defendant answered without objection to the jurisdiction of the court, but on the hearing submitted a motion to dismiss, because the remedy of the complainant was at law, on the agreement for the payment of rent. The motion to dismiss was sustained, and this court held properly. The court carefully distinguishes the case from that of *Andrews v. McCoy.* The distinction is, that under our practice a motion to dismiss may be made on the hearing, though no demurrer has been taken, and in the latter case the motion was made. While in the former it was not, and was consequently regarded as waived. If a defendant may, as it can not be doubted he may, waive the objection, that the subject matter of the suit, though lying, as the recovery of rent does, within the concurrent jurisdiction of a court of equity, is in the particular case without the jurisdiction of that court, because the remedy at law is adequate, he must be deemed to have waived it, when, without objection he answers, enters into active legislation on the merits, lures his adversary into security, withdraws his attention from the necessity of amendment, if an amendment can consistently with the facts be made, multiplies costs, protracts litigation, and on the hearing directs the attention of the court from the consideration of any other question, than whether the complainant has the right he asserts. Of course, we refer to cases in which the subject-matter of the suit lies within the jurisdiction of a court of

[Marshall et al. v. Gayle et al.]

equity, and the objection is, that the remedy at law is adequate, and not to cases in which the subject matter does not fall within the jurisdiction. We can not now sustain the objection made, that the remedy of the appellee at law, was adequate. That objection not having been made in the court below, in any form, if well founded, must be regarded as waived.—*Tyler v. McGuire*, 17 Wall. 253.

There was no error in overruling the exceptions to the report of the register. Upon questions of fact, such as the value of the use and occupation of lands, dependent not only on the evidence taken by deposition, but on the oral evidence of witnesses produced before the register, his conclusions are not disturbed, unless manifestly erroneous.—*Mahone v. Williams*, 39 Ala. 221. We can not say they are plainly wrong, but incline to the opinion they are correct, and we concur with the Chancellor in the opinion that they should not be disturbed.

Let the decree be affirmed.