# Coffey v. Hunt.

*Bill in Equity to enforce Landlord's Lien for Rent.*

1. *Rent an incident to, and passes with the reversion.*—Rent is an inci-·dent to the reversion and passes with it, in the absence of an express reservation in the transfer or assignment, whether the transfer or assignment is the voluntary act of the lessor, or results by operation of law, and whether it is an absolute conveyance, or a mortgage.

2. *Mortgage; right of mortgagee to possession and rents.*—A mortgage in fee, though executed to secure a debt falling due at a future day, operates as a present, immediate conveyance and transfer of all the right, title, interest and estate of the mortgagor in the mortgaged premises, and, in the absence of a reservation to the mortgagor of possession, or of the right to take and enjoy the rents and profits, until default in the performance of the condition, entitles the mortgagee to the present, immediate right of entry and possession, and to the rents subsequently accruing; and a subsequent assignment of the rents is subordinate to, and ·can not prevail against the prior grant of the reversion contained in the mortgage.

3. *When bill in equity can not be maintained for rent.*—Where land was rented for a part of the crop, and the tenant, after the rent became due, delivered the part of the crop stipulated to be paid by him as rent to a third party, who received it with notice, but under claim of title,—*held*, that a bill in equity can not be maintained by an assignee of the landlord against the tenant and the party receiving the rent, for its recovery, he having a clear, adequate and complete remedy at law.

APPEAL from Jackson Chancery Court.

Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed on 27th March, 1883, by R. ·C. Hunt against R. A. Coffey, J. P. Timberlake, P. H. Helton and I. E. Moore; and the case made thereby is substantially as follows: On 14th January, 1882, by written contract, one J. F. Martin rented to the defendant Moore, for the year 1882, a certain farm situate in Jackson county, in this State, for ten bales of cotton of a designated average and classification; and under this contract Moore took possession of the rented land, and raised a crop of cotton thereon. At the time this contract was made, there was an unsatisfied mortgage on said farm, ·executed by Martin to one W. F. Hurt, since deceased, to secure a debt which became due on 8th April, 1880; and on 2nd October, 1882, said Hurt's executor sold said farm under a power contained in the mortgage, and at the sale the defendants Coffey, Timberlake and Helton became the purchasers. On 13th May, 1882, Martin executed to the defendants last above named a mortgage on said farm, " to secure them in the

[Coffey v. Hunt.]

payment of $2000 each, to become due on 1st January, 1883." This mortgage is not exhibited with the bill, nor are its terms or provisions stated. On 12th June, 1882, Martin made an assignment to the complainant " of all his property, both real and personal, which was unincumbered," for the benefit of certain of his creditors therein named, who had not " otherwise been provided for prior to that date;" and under this assignment the complainant claimed that he " became subrogated to all the rights of said Martin," and entitled to receive the cotton which Moore had agreed to deliver as rent. On 15th March, 1883, Moore delivered said ten bales of cotton to Coffey, Timberlake and Helton, who, as charged in the bill, claimed it under their purchase at the mortgage sale, and who, at the time, had notice of the assignment to the complainant. It is further charged in the bill, that a part of the debt secured by the mortgage executed by Martin on 30th May, 1882, " was the identical debt" secured by the mortgage to Hurt, which Coffey, Timberlake and Helton agreed to pay ; that they further agreed not to suffer said farm to be sold under the mortgage to Hurt; and that, notwithstanding this agreement, they suffered said farm to be sold under said mortgage, and became the purchasers, with the view of claiming and collecting said rent. The prayer of the bill is, that the defendants be held liable to account to the complainant for the proceeds of the ten bales of cotton delivered by Moore to his co-defendants; that a decree be rendered against them for the amount thereof, with interest ; and for general relief.

The defendants demurred to the bill on the ground that the complainant had a full, complete and adequate remedy at law, and also moved to dismiss it for want of equity. The chancellor caused a decree to be entered, overruling the demurrer and the motion to dismiss; and that decree is here assigned as error.

HUMES, GORDON & SHEFFEY and ROBINSON & BROWN, for appellants. It has been expressly decided that when the statutory lien exists, the remedy of the landlord against a purchaser who, having notice of the lien, receives and converts the crop, is by special action on the case ; and he can not maintain a bill in equity, when it is not shown that the remedy at law is inadequate.—*Kennon v. Wright,* 70 Ala. 434; *Hussey v. Peebles,* 53 Ala. 432. It is not shown by the bill in this case that the remedy at law is not adequate and perfect; and the demurrer and motion should have been sustained.

R. C. HUNT, *contra.* (No brief came to the hands of the reporter.)

[Coffey v. Hunt.]

BRICKELL, C. J.—1. There can be no proposition or principle of law more firmly settled, than that rent is an incident to the reversion, passing with it to the assignee. Without an express reservation, an assignment or transfer of the reversion, when rent is accruing and to fall due at a future day, carries with it the right to demand and receive such rent as it falls due and payable.—Taylor's Land. & Ten. § 448; *English v. Key*, 39 Ala. 113; *Tubb v. Fort*, 58 Ala. 277. Whether the transfer or assignment of the reversion is the voluntary act of the lessor, or involuntary, by act and operation of law, as in the event of a judicial sale of the reversion, or of a sale by the sheriff under execution at law, which is quasi-judicial, makes no difference in the application of the principle.—*English v. Key, supra; Bank v. Wise*, 3 Watts, 394. And it applies equally, whether there is an absolute conveyance of the reversion, or whether the conveyance is by way of mortgage.—*Birch v. Wright*, 1 D. & East, 383; *Burden v. Thayer*, 3 Metc. 76; *Kimball v. Pike*, 18 N. H. 419.

In this State the law is settled, that a mortgage in fee, as appears to be the mortgage executed by the lessor, Martin, to the defendants, Timberlake, Coffey and Helton, operates as a present, immediate conveyance and transfer of all the right, title, interest and estate of the mortgagor in and to the premises mortgaged. If there is not a reservation to the mortgagor, in the conveyance, of possession, or of the right to take and enjoy the rents and profits, until default in the performance of the condition (and of the existence of such reservation there is no averment in the bill), the mortgagee has the present, immediate right of entry and possession, and may, at will, eject the mortgagor, or tenants entering under him subsequent to the mortgage.—*Duval v. McLoskey*, 1 Ala. 737; *Welsh v. Phillips*, 54 Ala. 309.

The mortgage operating as an immediate transfer and conveyance of all the estate of the mortgagor, though its purpose was the security of debts falling due at a future day, included a present right of entry and possession, in the absence of a stipulation that the mortgagor should remain in possession, or should enjoy the rents and profits, until condition broken, and carried with it, necessarily, the rents subsequently accruing. The assignment of the rent to the complainant, subsequent in point of time to the mortgage, was subordinate to, and can not prevail against the prior grant of the reversion.—*Kimball v. Pike, supra; Otis v. McMillan*, 70 Ala. 46. The mortgage was a conveyance of, and binding upon the whole realty, of which the rent accuring was a part. It was optional with the mortgagees whether they would take such rent or not; as it is always matter of election with a mortgagee whether he will

[Coffey v. Hunt.]

enter and take possession, before or after condition broken. It is with him matter of election, because, if he enters, or if he demands and receives rents, he is subject to account; and he may prefer standing upon the security of the mortgage, rather than to incumber himself with a liability to account for rents and profits. Therefore it is that, ordinarily, before condition broken, the mortgagor is left in possession, and suffered to enjoy rents subsequently accruing. But the right of the mortgagee to enter, or to demand and receive from a tenant having a prior lease, whose possession he can not disturb, rents subsequently accruing, remains optional, and he may exercise it *cum onere.—Burden v. Thayer, supra ; Newall v. Wright*, 3 Mass. 138. It is not of consequence whether the mortgagees claimed the rent as purchasers under the prior mortgage to Hurt, or in their right as mortgagees. In the latter capacity they had the right to demand and receive the rent, superior to the right asserted by the complainant, and payment to them extinguished the rent and the liability of the tenant.—*Mansony v. U. S. Bank*, 4 Ala. 735 ; *Chambers v. Mauldin, Ib.* 477 ; *Coker v. Pearsall*, 6 Ala. 542. The bill, consequently, upon its face, discloses a want of right and title in the complainant to the relief prayed, and the motion to dismiss ought to have been sustained.

2. When the right to recover rent is legal, not equitable, and there is an adequate remedy at law, a court of equity will not take jurisdiction to decree its recovery. The rule then applies, that a court of equity will not intervene for the enforcement of legal rights, when the remedy at law is clear, adequate and complete. But, if the remedy at law is doubtful or inadequate, or there is a peculiar equity, the court will take jurisdiction. *Tubb v. Fort*, 58 Ala. 277. In *Abraham v. Hall*, 59 Ala. 386, the tenant died, rendering it legally impossible for the landlord, by the pursuit of legal remedies, to enforce the statutory lien upon the crops raised upon the rented premises. As the lien is an incident of the tenancy, and there was a want of legal remedy for its enforcement, it was held that, in the exercise of its general jurisdiction to enforce liens, or trusts for the payment of debts, a court of equity could interfere, follow the crops into the hands of all others than a *bona fide* purchaser without notice, and enforce and render availing the lien. In *Westmoreland v. Foster*, 60 Ala. 448, there was an assignment of the rent, or, rather, of the promissory notes given for its payment, but there was not then a statute of force giving the assignee a remedy at law to enforce the statutory lien upon the crops grown on the rented premises. As there was a lien, an incident of the tenancy, a security for the payment of the rent, and a want of legal remedy for its enforcement, it was held, a court

[Coffey v. Hunt.]

of equity had jurisdiction to interfere for its enforcement, original and inherent, not affected by subsequent legislation giving the assignee a remedy at law. In each case, there was a want of remedy at law, and the lien, the security for the payment of the rent, would have been unavailing, without *laches* on the part of the party having the right, if the court had not intervened. But there is no authority for the intervention of the court, when there is a plain, adequate remedy at law, by the pursuit of which the party complaining can obtain all the relief claimed, or to which he is of right entitled. This principle must not, however, be regarded as infringing upon the general doctrine, that the original, inherent jurisdiction of a court of equity is not affected by statutes conferring a like jurisdiction on courts of law. The right of an assignee of rent to resort to equity for the enforcement of the statutory lien is not affected, because the statute now gives him a legal remedy. That question is not, however, now presented. If the complainant had a right to the rent, if it had been severed from the reversion, and had passed to him by the assignment, he would have a plain, unembarrassed remedy at law to recover of the defendants for the conversion of the cotton which was subject to the lien given by the statute to secure the payment of the rent. The defendants having, as it is averred in the bill, taken and converted the cotton, with notice of the lien, thereby rendering unavailing remedies for its enforcement, a special action on the case would be maintainable against them ; and in that action, the recovery of the complainant, would be precisely co-extensive with that which he now claims, the value of the cotton, with interest from the conversion.—*Hussey v. Peebles,* 53 Ala. 432 ; *Hudson v. Vaughan,* 57 Ala. 609 ; *Lavender v. Hall,* 60 Ala. 214 ; *Lomax v. LeGrand, Ib.* 537 ; *Boggs v. Price,* 64 Ala. 514. Or if the defendants had converted the cotton into money, or its equivalent, an action of *assumpsit* for money had and received would lie against them.—*Thompson v. Merriman,* 15 Ala. 166 ; *Westmoreland v. Foster, supra.* These plain and adequate remedies at law existing, there is no necessity or reason for the peculiar remedial process or functions of a court of equity ; and if the bill were entertained, the court would and could act only as a court of law, administering no other relief than is obtainable in such court by the pursuit of the ordinary remedies. The demurrer to the bill was well taken, and ought to have been sustained. The decree is reversed, and the cause remanded for further proceedings in conformity to this opinion.