(132 So. 52)

## WALSH v. BANK OF MOUNDVILLE.

### 2 Div. 967.

Supreme Court of Alabama.

Oct. 16, 1930.

Rehearing Granted Dec. 18, 1930.

R. B. Evins, of Birmingham, for petitioner.

B. M. Anderson, of Hartford, Conn., and T. B. Ward and J. M. Ward, both of Tuscaloosa, amici curæ.

Thos. E. Knight, Jr., of Montgomery, and H. F. Reese, of Selma, opposed.

SAYRE, J.

We state the facts as they appear of record:

March 9, 1915, F. C. Owens and others executed and delivered to Kelly a mortgage of lands in Hale county to secure an indebtedness then incurred. The mortgage was duly recorded.

March 8, 1923, Kelly died, and E. P. Walsh was appointed to administer upon his estate. As such administrator Walsh foreclosed the mortgage according to the power therein, and Carrie K. Walsh became the purchaser, and the administrator conveyed to her, April 28, 1924.

In May, 1924, Walsh, representing the plaintiff, appellant, notified the bank, appellee, that appellant had bought the land and would demand the rents for the current year.

"Neither said Walsh"—we quote the bill of exceptions—"nor anyone for the plaintiff, gave any written notice to tenants or to defendant regarding said rents at any time." There has been no written demand for possession of the land after foreclosure of the mortgage. "In the year 1924, prior to the foreclosure of the said mortgage to Kelly, said F. C. Owens had taken rent notes from a number of the tenants on said lands for the rent thereof for that year, payable to himself as agent, and had transferred and endorsed the same for a valuable consideration to defendant (the bank of Moundville). And said tenants at the time of said foreclosure were in possession of said lands under said rental contracts." In November, 1924, tenants, who had made the rent notes which had been transferred and indorsed to the bank, paid said notes to the bank, and the bank had refused to pay the amounts so received by it over to plaintiff on demand before the bringing of this suit. "No written notice that said rent was due plaintiff or written demand for the payment thereof to her was ever made by her, or on her behalf, on or to any of said tenants or said defendant at any time, and there was no attornment by said tenants to said plaintiff."

As shown by the opinion on the first appeal, the rent notes, which had been assigned by the mortgagor to the Bank of Moundville, became due and were paid by the tenants to the bank after foreclosure of the mortgage, and the question now at issue is whether the purchaser at the foreclosure sale or the mortgagor's assignee, claiming under an assignment made before foreclosure, had the better right to the proceeds of the notes paid by the tenants to the assignee of the mortgagor.

On the first trial judgment was rendered for plaintiff—as appears from the report of the case, 216 Ala. 116, 112 So. 438—and that judgment was reversed. On a second trial the court followed the opinion noted above, and, on appeal, the Court of Appeals (131 So. 51), following the decision of this court, approved the general charge requested by defendant.

In its former opinion (216 Ala. 116, 112 So. 438) this court appears to have laid stress upon section 5747 of the Code of 1907—section 10143 of the present Code. That section deals with the right of redemption and the forfeiture of that right by the failure of the debtor or any one holding under him to comply with its provisions. And the right of appellant, plaintiff, purchaser at the foreclosure sale, to receive from the tenants of the debtor rents falling due after foreclosure depends upon different considerations. Appellant relies upon the proposition "firmly established in the law * * * that rent is an incident to the reversion; and that whoever is entitled to the reversion, at the time the rent becomes payable, is of right entitled to it, unless it is reserved from the grant, or has been previously severed." Tubb v. Fort, 58 Ala. 277, citing authorities. In that case it was further said: "It is not material whether the assignment of the reversion is by the act of the lessor, or by operation of law, the rent passes to the assignee." The rule aforestated

was recognized by this court on the first appeal in this cause where Greenwood v. Bennett, 208 Ala. 683, 95 So. 159, and Davis v. Reed, 211 Ala. 207, 100 So. 226, were cited with comment.

■ The true basis of the opinion on former appeal appears to be found in still another proposition of law which was applied to the facts as they appear of record; viz., rent is an incident to the reversion, but each may be assigned without the other. There is no inseparable connection between the two. For aught appearing to the contrary, Owens in transferring the rent notes acted as agent for the mortgagor. If in fact he acted in his own interest as owner, mortgagor, that would make no difference in the application of the principle which suffices to determine this appeal. It appears to have been held that his transfer of the notes, before the foreclosure under which appellant claimed, worked a severance, and the rents, having been thus severed, did not pass as an incident to the reversion, and the bank was entitled as of right to retain them, its ownership unaffected by the subsequent foreclosure.

Upon further consideration the court is of a different opinion.

■ Unless it is made payable in advance, no claim for rent arises until the lessee has enjoyed the premises during the whole time for which the payment of rent is stipulated to be paid. Rent cannot be apportioned as to time. Whoever owns the reversion at the time the rental falls due is entitled to the entire sum then due. And from English v. Key, 39 Ala. 117, from which, in substance, the foregoing statements of law are taken, we quote: "Rent is incident to the reversion; and the lessor's transfer of the reversion, though without the tenant's attornment to the assignee, or any express mention of the rent, carries with it the rent falling due thereafter. The holder of the reversion"—appellant in this case—"may indeed, sever the rent from the reversion; but, unless it is specially reserved, the rent follows the reversion as a part of the realty." For the rest, we cite Tubb v. Fort, 58 Ala. 277, to the proposition that whoever is entitled to the reversion when the rent falls due is also entitled to the rent unless it has been previously severed, and the purchaser at mortgage foreclosure sale is entitled to the rent afterwards falling due as against the assignee of the tenant's obligation to pay whose interest was acquired in subordination to the previous mortgage. In other words, the mortgagor could not, as against the purchaser at the foreclosure sale under a mortgage previously executed, effectuate a severance of rents by an assignment thereof before foreclosure if the assignee is charged with notice of the mortgage, and that it might be foreclosed before the maturity of the rent. The Bank of Moundville was

such an assignee and it is responsible to appellant purchaser at foreclosure sale before the rents become due. See, also, Coffey v. Hunt, 75 Ala. 238, and Kirkpatrick v. Boyd, 90 Ala. 449, 7 So. 913.

The two cases last cited, along with English v. Key, supra, all written by competent judges, settle the equities of this case and the rights of the parties. No just distinction can be drawn between them and the case at bar. This is peculiarly true of Coffey v. Hunt, supra, where, in circumstances identical in every material respect, the court denominated the estate acquired by the foreclosure of a mortgage as the reversion and of the tenant's liability to the purchaser at foreclosure as a liability for rent. And in Mortgage Co. v. Turner, 95 Ala. 277, 11 So. 211, 212, the court held this language: "But the right to recover *rents* [italics supplied] in such cases [that is, after foreclosure] does not grow out of the relation of landlord and tenant. It is the right to recover for the use and occupation of his premises, the value of which is fixed by the rental agreement, where [as in this case] he gives notice that he will claim the rents." We indulge the foregoing quotation for the sole purpose of showing that the courts would not heretofore have considered the fact that plaintiff was suing for rent, eo nomine, as a sufficient reason for denying relief to him in cases in which the tenant in possession holds over after a reversion of the title, and for the further reason that the opinion on the first appeal and the dissent now proceed upon the proposition that plaintiff was not entitled to recover because he claimed rents, though he might have recovered had he claimed the amount of the rent as for use and occupation. We quote further from Mortgage Co. v. Turner: "The mortgagor"—the court intended as we think to write "mortgagee"—"may claim the rents after the law day, and after notice may recover the rent which accrues thereafter, but the right to recover rents in such cases does not grow out of the relation of landlord and tenant. It is the right to recover for the use and occupation of his premises, the value of which is fixed by the rental agreement, where he gives notice that he will claim the rents." And, further: "So contracts relative to the mortgaged property subsequent to the mortgage by every principle of law are subordinate to it and the mortgagee's right to entry." The discussion need not be prolonged. What has been here written in respect of Mortgage Co. v. Turner, supra, has been written with a view to showing that, according to that case, the conclusion reached in the present case is, not only sound as an abstract principle, but is sound as affecting the administration of justice in the concrete case.

It results that the writ must be granted to the end that a judgment be rendered by the Court of Appeals in agreement herewith, and,

indeed, we think it may be inferred from the opinion of that court, such would have been the judgment of that court had it not been under constraint by the opinion of this court on the first appeal.

Writ awarded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

FOSTER, J. (dissenting).

As stated in the majority opinion of the court, the principle applicable on this appeal is the rule well settled that the person who owns the reversion when the rent of land falls due is entitled to it, unless it was reserved or was severed before the reversion was transferred. Coffey v. Hunt, 75 Ala. 236; Tubb v. Fort, 58 Ala. 277; English v. Key, 39 Ala. 113.

The reversion here referred to is the right remaining in the lessor of land after the execution of the lease. A transfer of land therefore before the execution of the lease is not, in the nature of things, a transfer of the reversion effected by such lease. For the principle to have operation the lease must have created the reversion before the execution of the transfer.

A mortgage executed by the lessor after the execution of the lease is a transfer to the mortgagee of the reversion. Mortgage Co. v. Turner, 95 Ala. 272, 11 So. 211; Coffey v. Hunt, supra; Drakford v. Turk, 75 Ala. 339; Comer v. Sheehan, 74 Ala. 452. But it is also distinctly held in the same cases that a mortgage executed before the lease is not a conveyance of the reversion, and, by such mortgage, the mortgagee does not acquire any right to the rent stipulated in the lease, nor to other rights as a landlord under it. I do not understand that any of the authorities take a different view of the effect of such situation.

The only matter which I think has difficulty is whether the foreclosure deed executed after the lease is of itself a transfer of the reversion then remaining in the mortgagor under the lease executed prior to the foreclosure and subsequent to the mortgage. I think this question is directly involved in the case of Mortgage Co. v. Turner, supra. The court was dealing with a mortgage executed prior to a lease, which was in turn prior to a foreclosure under the power of sale in the mortgage. Under such circumstances the court held that the purchaser, who was also the mortgagee, acquired no privity with the tenant, and could not enforce the statutory remedies of a landlord under the contract, but only had a claim for use and occupation after giving notice if he elects to make such claim. That decision treats the purchaser as being in the same position as the mortgagee was before foreclosure.

In the case of Coffey v. Hunt, supra, the mortgage was given after the lease, but the mortgagee was also the purchaser at a foreclosure sale under an old mortgage given before the lease. The court confined its discussion of his rights to those as mortgagee, and pretermitted the question of whether the foreclosure conferred any claims upon him to the rents under the lease.

The exact question has been decided, I take it, in the Turner Case, supra, which adopted for Alabama what may be otherwise an uncertain question.

In 14 A. L. R. 664, et seq., there is shown to be a difference of opinion upon the effect of a foreclosure in equity as a transfer of the reversion in respect to a lease executed after the mortgage. The majority hold that there is such a transfer effected unless the lessee is made a party and his rights annulled by the decree. For a discussion of that question, I refer to the above annotation.

This is in accord with the further conclusion pointed out in the majority opinion on this appeal and elsewhere that the transfer of the reversion may be either voluntary or involuntary or by operation of law. 36 Corpus Juris, 366.

Referring to this situation the Court of Appeals of New York says that the situation "is precisely the same so far as the estate granted was concerned as if the lease had been prior to the mortgage." Metropolitan Life Ins. Co. v. Childs, 230 N. Y. 285, 130 N. E. 295, 297, 14 A. L. R. 658. The annotations in 14 A. L. R. 676, point out that a foreclosure under the power of sale is held in many cases cited there not to convey the reversion nor the rights of the landlord under the subsequent lease. A contrary opinion is not there shown to exist, but the Turner Case, supra, and Phillips v. Birmingham, etc., Co., 171 Ala. 445, 54 So. 603, are cited as supporting the view of the text. Such is undoubtedly the effect of these cases.

But it seems to me that the argument is sound that, if such foreclosure is by virtue of a power of sale in the mortgage, executed by the attorney in fact authorized therein to do so, just as if the mortgagor had himself by his own hand executed a transfer of the land on the occasion of the foreclosure, it would be a conveyance of the reversion, just the same as a foreclosure sale in equity.

But it is claimed that, even though this be true, it is not effective here, because before such transfer there was a severance by an assignment to the bank of the rent notes. Undoubtedly such an assignment creates a severance unless the rights of others intervene. Young v. Garber, 149 Ala. 196, 42 So. 867; Ala. Gold Life Ins. Co. v. Oliver, 78 Ala. 158.

In response to the effect of that claim on this situation, it may be suggested that the foreclosure sale was under a power and by authority of a right granted before the alleged severance, and which operated upon the rever-

sion under the lease as soon as the lease came into being, and before the notes were assigned, and that, therefore, it took precedence over an attempted severance by an assignment of the rent notes to one with notice of the terms of the recorded mortgage. That appears to me to be sound reasoning, and sufficient to justify the final conclusion reached by this court, as an abstract principle. But I think it is in conflict with the opinion in the Turner Case, supra, and a large number of cases cited in the foregoing annotations. That opinion has been considered as controlling on the question, and has been followed on this point. Phillips v. Birmingham Industrial Co., 171 Ala. 445, 54 So. 603. As long as it remains without qualification, I think, the rights of parties which accrued in accordance with the principles then asserted should be protected in court. When the notes were transferred to the bank, it may have been advised by counsel, and could, I think, have relied upon the pronouncement of this court that it thereby acquired rights not affected by those of the mortgagee or a purchaser at foreclosure sale thereof.

When this court on former appeal in this case adhered to that conclusion, I think it thereby enforced a doctrine supported by at least the two decisions of this court, and, also, those shown in the annotations above cited. Where a decision is long acquiesced in and acted upon, and, perhaps, many transactions rest upon it, including, perhaps, the one here in controversy, it should be treated as controlling in this case, even though it may now be changed as affecting future transactions. Shelby County v. Farson, 197 Ala. 375, 72 So. 613; Bibb v. Bibb, 79 Ala. 437; Matheson's Heirs v. Hearin, 29 Ala. 210; Field's Heirs v. Goldsby, 28 Ala. 218, 65 Am. Dec. 341; McVay's Adm'r v. Ijams, 27 Ala. 238.

My judgment is that the opinion pronounced on former appeal should be adhered to on this. I cannot therefore agree with the result reached by the majority, though it may be sound as an abstract principle.

BROWN, J. (dissenting).

The fault in the opinion of the majority is that it proceeds on the false assumption that Mrs. Walsh, the purchaser at the foreclosure sale, acquired an estate in *reversion* from the mortgagors. This of course would be true if the mortgage had been executed subsequent to the lease, because in such case the mortgage would be of the *reversion only*, and would not affect the leasehold interest of the mortgagor's tenant, which was superior to the mortgage.

Such was the case presented in Coffey v. Hunt, 75 Ala. 238. The right of the defendants in that case to the rents was rested on the subsequent mortgage. The court, speaking through Chief Justice Brickell, observed:

"The mortgage operating as an immediate transfer and conveyance of all the estate of the mortgagor, though its purpose was the security of debts falling due at a future day, included a present right of entry and possession, in the absence of a stipulation that the mortgagor should remain in possession, or should enjoy the rents and profits, until condition broken, and carried with it, necessarily, the rents subsequently accruing. The assignment of the rent to the complainant, subsequent in point of time to the mortgage, was subordinate to, and can not prevail against the prior grant of the reversion. Kimball v. Pike, supra [18 N. H. 419]; Otis v. McMillan, 70 Ala. 46. The mortgage was a conveyance of, and binding upon the whole realty, of which the rent accruing was a part. It was optional with *the mortgagees* whether they would take such rent or not; as it is always matter of election with a mortgagee whether he will enter and take possession, before or after condition broken. It is with him matter of election, because, if he enters, or if he demands and receives rents, he is subject to account; and he may prefer standing upon the security of the mortgage, rather than to incumber himself with a liability to account for rents and profits. Therefore it is that, ordinarily, before condition broken, the mortgagor is left in possession, and suffered to enjoy rents subsequently accruing. But the right of the mortgagee to enter, or to demand and receive from a tenant *having a prior lease*, whose possession he can not disturb, rents subsequently accruing, remains optional, and he may exercise it cum onere. Burden v. Thayer, supra [3 Metc. (Mass.) 76, 37 Am. Dec. 117]; Newall v. Wright, 3 Mass. 138, 3 Am. Dec. 98. It is not of consequence whether the mortgagees claimed the rent as purchasers under the prior mortgage to Hurt, or in their right as mortgagees. *In the latter capacity* they had the right to demand and receive the rent, superior to the right asserted by the complainant, and payment to them extinguished the rent and the liability of the tenant." (Italics supplied.)

It is interesting to note that, although the defendants in that case asserted their right to the rents under the purchase at foreclosure of the prior mortgage, as the statement of facts will show, the learned Chief Justice declined to rest their right on that ground, and placed it on their right as mortgagees of the reversion under the subsequent mortgage.

In Kirkpatrick & Co. v. Boyd & Boyd, 90 Ala. 449, 7 So. 913, the land was sold under execution, and, at the time the lease was entered into, the legal title to the property was in the judgment debtor incumbered by the execution lien, with the result that the letting to the tenant created a leasehold with reversion in the judgment debtor—both es-

tates incumbered by the lien—and through the sale under the execution the purchaser acquired the reversion as well as the lease-hold estate, making applicable the doctrine that rent is an incident to the reversion and follows it.

In that case it was held that the execution in the hands of the sheriff operated as a lien upon the *entire* interest in the land, and the defendant in execution could not, after the lien had attached, impair its value by assigning the rent.

An assignment before judgment lien attached was sustained in Young et al. v. Garber, 149 Ala. 196, 42 So. 867, for the reason that there was nothing to prevent a severance of the rent from the reversion by assigning the rent notes.

In English v. Key, 39 Ala. 113, the tenant was evicted pending his term by a paramount title, and this relieved him from liability to pay rent to his landlord whose *reversionary interest* was sold under execution. The holding in that case was not that rent or mesne profits for use and occupation *could not be* apportioned in any case, but that, "in conformity to the principle that an *entire contract* cannot be apportioned, there is, in such cases, no apportionment of rent in reference to the length of time of occupation." 39 Ala. 116.

So much for the cases relied on by the majority.

It is axiomatic that, unless Mrs. Walsh by her purchase at a foreclosure sale acquired an estate in reversion, the principles upon which the majority opinion is rested have no application. What interest did she acquire?

For more than a half of a century it has been the settled law of Alabama that: "Whatever may be the theory of a mortgage of lands elsewhere recognized, it is settled in this State, by a line of decisions which have become essential to the safety of titles, that it is more than a security for a debt, or a mere chattel interest. 'It creates a direct, immediate estate in lands; as against the mortgagor, and those claiming in his right, *a fee simple, unless otherwise expressly limited.* The estate is conditional—annexed to the fee is a condition which may defeat it. The mortgagee, if in the conveyance there is not a reservation of possession to the mortgagor, until default in the performance of the condition, has the immediate right of entry, and may eject the mortgagor or his tenants. If the mortgagor is permitted to remain in possession, he is the mere tenant at will of the mortgagee. After the law-day, and default in the performance of the condition, at law, the estate is absolutely vested in the mortgagee—the estate is freed from the condition annexed to it. Nothing remains in the mortgagor but the equity of redemp-

tion, of which courts of law take no notice.'" Farris & McCurdy v. Houston, 74 Ala. 169; Thompson & Co. v. Union Warehouse Co., 110 Ala. 499, 18 So. 105; Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 83 So. 472.

The sole and only effect of the foreclosure was to cut off the equity of redemption and vest in the purchaser, who was not the mortgagee, not a reversion, but the unconditional fee-simple title to the property, with the right to immediate possession from and after the date of the sale, subject only to the statutory right of redemption. Her title was not incumbered by any tenancy created by the mortgagor subsequent to the execution of the mortgage. Comer v. Sheehan, 74 Ala. 452.

What then was the right of the purchaser at the foreclosure sale? This is answered by the able opinion of Mr. Justice Coleman in American Freehold Land Mtg. Co. v. Turner, 95 Ala. 272, 11 So. 211. The purchaser may either oust those in possession or recover of them *mesne profits* for use and occupation from the date of his purchase. He is not entitled to recover rents unless he can show that those in possession have attorned or agreed to attorn to him. Drakford v. Turk, 75 Ala. 339.

In the instant case the tenants refused to attorn or recognize Mrs. Walsh as their landlord. There was therefore no privity of contract between Mrs. Walsh and the tenants of the mortgagor; nor can it be said, under the facts of this case, that the money paid by said tenants in satisfaction of their note held by the bank ex æquo et bono, as upon implied contract, belonged to the plaintiff. She was only entitled to recover mesne profits as for use and occupation in a suit against the tenants from the date of her purchase at the mortgage sale. That is the effect of our holding on the former appeal, and in my opinion the result then announced was in accordance with the law as settled in this state, and the rights of the parties, and that decision should not be disturbed. Bank of Moundville v. Walsh, 216 Ala. 116, 112 So. 438.

I therefore respectfully dissent.

THOMAS, J. (dissenting).

In addition to the discussion of our decisions by Justices BROWN and FOSTER, I wish to add that I have heretofore expressed my views on the question at issue in Bank of Moundville v. Walsh, 216 Ala. 116, 112 So. 438. And I followed the decision in American Freehold Land Mtg. Co. v. Turner, 95 Ala. 272, 11 So. 211, and observations contained in Comer v. Sheehan, 74 Ala. 452. Whatever the rule may be in other jurisdictions, on the first appeal the opinion adhered to the rule that obtained in this jurisdiction. There is an interesting note on the subject to be found,

and many authorities collected, in 14 L. R. A. 668, et seq. I see no good reason to overrule the decision rendered long ago and reported in 95 Ala. 272, 11 So. 211, and followed recently in 216 Ala. 116, 112 So. 438.

I therefore respectfully dissent.