31 So.2d 361

### JONES v. SCOTT.
#### 7 Div. 904.

Supreme Court of Alabama.
June 26, 1947.

W. A. Weaver and Thos. E. Embry, both of Pell City, for appellant.

W. T. Starnes, of Pell City, for appellee.

FOSTER, Justice.

This is an action for use and occupation and for rent of two small tracts of land with the houses. Deeds were made to plaintiff and her husband, T. D. Scott, by his father, W. R. Scott, one dated May 18, 1931, and one dated November 30, 1934. The deed dated November 30, 1934, reserved to the grantor a life estate in said property. The other did not have such a clause, but had one prohibiting its sale or mortgage to any one except brothers and sisters so long as the grantors live. But by its terms it passed the immediate right to possession.

There was a decree of divorce in the Circuit Court of the Tenth Circuit (Jefferson County) dissolving the marriage of plaintiff and T. D. Scott, dated December 4, 1940, providing alimony payable monthly, and in addition divesting out of T. D. Scott his interest in the tracts of land described in the two deeds and vesting same in plaintiff. The defendant offered the court records in a suit filed in equity in St. Clair County April 17, 1940 by W. R. Scott against this plaintiff and her husband, T. D. Scott, relating to that parcel of land conveyed by the deed dated November 30, 1934, and seeking to have that deed vacated under section 8046, Code of 1923, Code 1940, Tit. 20, § 15, for failure to support him, and the final decree of that court dated September 27, 1943, denying relief and its affirmance in this Court. See Scott v. McGill et al., 245 Ala. 256, 258, 16 So.2d 866. W. R. Scott, the grantor, died September 8, 1941, and the suit was continued on revival in the name of H. E. Scott as administrator. The court sustained plaintiff's objection to this court proceeding.

We have observed that W. R. Scott, the grantor, died September 8, 1941. At that time he owned a life estate in the parcel of land conveyed by the deed of November 30, 1934, with remainder effective at his death in plaintiff, under that deed and the divorce decree. But the deed of May 18, 1931, to T. D. Scott and plaintiff did not reserve a life estate, but the title and right to possession passed under the deed and decree into plaintiff who owned it at and before the death of W. R. Scott.

The best we can understand the testimony is that the land claimed by plaintiff under those instruments is nine or ten acres in the deed of November 30, 1934, the old home of W. R. Scott, and about six acres in the deed of May 18, 1931, which does not adjoin the old home site. The evidence is that W. R. Scott had in all 47 acres: that during his life he rented it all to this defendant Jones, by the quarter, and the rent was payable in advance by the month. Each quarter started a new period. After W. R. Scott died in September 1941, defendant paid the amount of the stipulated rent to his administrator, H. E. Scott, sometimes called Hosmer. The next year after the death of W. R. Scott the administrator rented the land to defendant, who paid the rent monthly to him. This continued until March 1944, when the administrator notified him that he had lost the case in the Supreme Court, and from that time on, he has paid the rent to plaintiff. She is claiming for use and occupation or rent from September 8, 1941 to March 1944. For this the court gave the affirmative charge to plaintiff, and there was a verdict and judgment in her favor for $72. Plaintiff bases her claim on the principle that she succeeded to the reversion at the death of W. R. Scott, and therefore claims that the rental contract then outstanding passed to her on the principle of our cases. English v. Key, 39 Ala. 113, 117; Tubb v. Fort, 58 Ala. 277; Coffey v. Hunt, 75 Ala. 236, 238; Kirkpatrick v. Boyd, 90 Ala. 449, 7 So. 913; American Freehold Land Mortgage Co. v. Turner, 95 Ala. 272, 11 So. 211; Comer v. Sheehan, 74 Ala. 452; Walsh v. Bank of Moundville, 222 Ala. 164, 132 So. 52; First Nat. Bank of Russellville v. Welch, 222 Ala. 144, 132 So. 44.

Those cases are not directly in point. Plaintiff's right did not vest in either tract at the death of W. R. Scott, but she owned a vested remainder in one tract effective in all respects as such before his death, and before he rented the land to defendant, and in the other tract her rights were not

affected by the death of W. R. Scott. She is not in the attitude of having acquired the landlord's reversion after he had rented the land and thereby become an assignee of his contract of lease then outstanding, which apparently ended with September 1941, the end of a quarter. But her relation as to one tract was that of a remainder effective at the death of W. R. Scott, and as to the other tract her interest was operative before his death. So that for the quarter ending September 30th, as to the tract embraced in the deed of November 30, 1934, their respective rights are controlled by section 14, Title 31, Code of 1940. The rent for September was payable in advance, and the life tenant died after it became due for that month, so that for September 1941, it was due to be paid to the administrator of W. R. Scott, as was done. From that time until March 1944, the administrator was in litigation with plaintiff, and defendant paid the rent to the administrator under a contract by which he rented from the administrator during that period. From October 1, 1941 to March 1944, defendant was in possession as tenant under contract with the administrator made after the death of W. R. Scott. The contract between W. R. Scott and defendant terminated with September 1944 by its terms.

█ It was long ago declared to be the law in Alabama that if a life tenant died during the term of the lease, which he had made, it was immediately terminated. Price v. Pickett, 21 Ala. 741; 6 A.L.R. 1512. The remainderman and lessee of a life tenant do not occupy the relation of landlord and tenant by virtue of any purported lease by the life tenant extending beyond the duration of his life. 33 Am.Jur. 773, note 10. But to create such relation, there must be contract expressed or implied between the remainderman and such lessee occurring after the death of the life tenant. 33 Am.Jur. 744, note 2.

There has been much consideration by the courts of the rights of the estate of a life tenant on the one hand and those of a remainderman on the other in respect to a lease on the land. There are two aspects of that question extending through the authorities. One is where the lease was made for a period, and after it was executed and during that period the owner created a life estate with a vested remainder in another. Under those circumstances, after the death of the life tenant, the lessee's rights continued as before, extending throughout its term, and the question was, to what extent the estate of the life tenant should share in the stipulated amount of rent. If the life tenant died before any rent accrued it was the common-law rule that it all, or that which became due after the death of the life tenant, vested in the remainderman. 33 Am. Jur. 815, note 2; Watson v. Penn, 108 Ind. 21, 8 N.E. 636, 58 Am.Rep. 26.

This view is referred to in our case of Frazer v. First National Bank, 235 Ala. 252, 178 So. 441, 126 A.L.R. 1, and in Graham v. Graham, 205 Ala. 644, 89 So. 25: see, 126 A.L.R. 42.

█ And the question of apportionment arose at common law only when the lease was created before the life estate and remainder were set up, and did not terminate with the death of the life tenant. That status of the law has not been changed by statute. English v. Key, 39 Ala. 113.

But when the lease was put upon the land by the life tenant, who died during the term of the lease, the lease was immediately terminated. Price v. Pickett, 21 Ala. 741; Terrell v. Reeves, 103 Ala. 264, 16 So. 54; Sanders v. Sutlive Bros. & Co., 187 Iowa 300, 174 N.W. 267, 6 A.L.R. 1503; 33 Am.Jur. 772, section 277.

But the statute of 11 George 2 (Chapter 19, section 15), was recognized as in force in this State prior to its adoption in section 8831, Code of 1923, section 14, Title 31, Code of 1940. Graham v. Graham, 205 Ala. 644, 649, 89 So. 25; English v. Key, 39 Ala. 113. That statute of 1738, A. D. was as follows: "XV. And whereas where any lessor or landlord, having only an estate for life in the lands, tenements, or hereditaments demised, happens to die before or on the day, on which any rent is reserved, or made payable, such rent, or any part thereof, is not by law recoverable by the executors or administrators of such lessor or landlord; nor is the person in reversion entitled thereto, any other than for the use

and occupation of such lands, tenements, or hereditaments, from the death of the tenant for life; of which advantage hath been often taken by the under-tenants, who thereby avoid paying anything for the same; for remedy whereof, be it enacted by the authority aforesaid, That from and after the twenty-fourth day of June one thousand seven hundred and thirty eight, where any tenant for life shall happen to die before or on the day on which any rent was reserved or made payable upon any demise or lease of any lands, tenements, or hereditaments, which determined on the death of such tenant for life, that the executors or administrators of such tenant for life shall and may in an action on the case recover of and from such under-tenant or under-tenants of such lands, tenements, or hereditaments, if such tenant for life die on the day on which the same was made payable, the whole, or if before such day then a proportion, of such rent according to the time such tenant for life lived, or the last year, or quarter of a year, or other time in which the said rent was growing due as aforesaid, making all just allowances or a proportionate part thereof respectively."

The apportionment so provided relates to rent which by the terms of the lease became due after the death of the life tenant.

The effect of this English statute was not in terms to extend a lease which terminated with the death of the life tenant, and the administrator of the life tenant was not given a right to sue on the lease contract, but in an action on the case.

■ But the act made no express provision for a suit by the remainderman, leaving his right to recover his portion of the amount of the stipulated rent next thereafter "growing due" according to other provisions of law. It did not create the relation of landlord and tenant between the remainderman and tenant. Our section 14, Title 31, Code, contains the substance of that act without the preamble and without specifying the nature of the administrator's suit, nor that of the remainderman. Perhaps the common counts would suffice as for a debt. Connecticut Gen. Life Ins. Co. v. Smith, 226 Ala. 142, 145 So. 651.

■ If the tenant holds on during the term of the lease after the death of the life tenant thereby terminating the lease, it is said in Price v. Pickett, supra, that he is only entitled to emblements, yet it is stated in that case that he must pay rent for the unexpired term, but we observe that it is subject to apportionment under section 14, Title 31, supra. Under it there is an implied agreement to pay the remainderman the amount due him by its provisions. But that is not because the relation of landlord and tenant exists, but by the statute. But such right would not extend beyond the term of the lease with the life tenant. That here ended with September 1941.

■ The defendant was never under any contract, expressed or implied, with this plaintiff, the remainderman, and never became her tenant. His holding over after the term of the lease with W. R. Scott expired was not a holding over by plaintiff's tenant, and did not estop him to show that he held under an adverse claimant.

The plaintiff as remainderman did not permit or allow defendant to remain in possession after the termination of his lease with the life tenant, but defendant rented it from the administrator of the life tenant under an adverse claim, and refused to pay rent to the remainderman, plaintiff, from the death of the life tenant until March 1944, when he then rented it from plaintiff. Compare section 944, Title 7, Code.

■ Under section 46, Title 31, Code, an owner of land cannot sue one in lawful possession for use and occupation if his possession is adverse to the owner's claim, when he is not estopped to question the claim of ownership by plaintiff. Powell v. New England Mortgage Security Co., 89 Ala. 490, 8 So. 136; Fielder v. Childs, 73 Ala. 567; Stringfellow v. Curry, 76 Ala. 394; Kay v. Adams, 223 Ala. 33, 134 So. 628; Crabtree v. Street, 200 Ala. 442, 76 So. 374; Id., 201 Ala. 630, 79 So. 192; Alexander v. Letson, 242 Ala. 488, 7 So. 2d 33.

■ In all cases brought under subsections 1, 2 and 3 of section 46, Title 31, Code, there must exist a relation between

the parties founded on the express or implied contract which estops the defendant from drawing the title of the owner into the controversy, and under subsection 4 of that statute, the action may be maintained if possession was obtained unlawfully. Alabama Butane Gas Co. v. Tarrant Land Co., 244 Ala. 638(11), 15 So.2d 105.

 Although the defendant did not make claim to the land during the period here involved, he occupied it under a lease from one who did claim an equitable right to it in apparent good faith, and therefore that defense is available to him. Lankford v. Green, 52 Ala. 103; Stringfellow v. Curry, 76 Ala. 394; Powell v. New England Mortgage Security Co., 89 Ala. 490, 8 So. 136.

If one in actual possession of land, not under estoppel to plaintiff, and not a trespasser, rented the land from another making bona fide claim to it and expressly promised to pay rent to him, plaintiff cannot recover in assumpsit for use and occupation, since "an implied assumpsit to one cannot be raised in the face of an express promise to another for the same consideration." Shumake v. Nelms, 25 Ala. 126; 66 Corpus Juris 87, note 70.

The litigation to which we have referred was relevant and legal to show the adverse bona fide equitable claim made to the land by the administrator of W. R. Scott from whom defendant rented. This litigation was begun in the lifetime of W. R. Scott and continued upon revival in the name of his administrator. Its purpose was to cancel the conveyance to plaintiff of her remainder interest. This plaintiff as defendant in that suit could after the death of W. R. Scott by cross-bill have claimed mesne profits under section 938, Title 7, Code, and made this defendant a party and impounded the rent liability fixed by section 944, Title 7, Code. After the termination of that suit, the action for use and occupation will not lie against defendant who was the tenant of the administrator. Shumake v. Nelms, supra.

The parties in brief seem to treat both tracts as conveying only a remainder. But whether or not the deed of May 18, 1931, conveys a present right of enjoyment, plaintiff did not seek to exercise that right until after the death of W. R. Scott, and that property was not involved in the litigation referred to. But plaintiff is in no respect a party to the lease made by W. R. Scott to defendant, and never became such, and never made another contract with defendant until March 1944, and did not acquire from W. R. Scott his reversionary interest as landlord after he made the lease with defendant. But plaintiff owned and claimed before such lease was made the right which she claimed afterwards. There was after the lease no passing to plaintiff of W. R. Scott's reversionary right under his lease. Comer v. Sheehan, supra; First National Bank v. Welch, supra.

While the right to rent goes with the reversion, it means a passing of the reversion from the landlord after the landlord has made the lease, and not to a remainderman by virtue of a status created before the lease.

The affirmative charge was not properly given for the plaintiff according to our view of the situation, but should have been given for the defendant.

Reversed and remanded.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.