## COMMISSIONER OF INTERNAL REVE-NUE v. O'KEEFFE.

### No. 3638.

Circuit Court of Appeals, First Circuit.

April 4, 1941.

Lee A. Jackson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for the Commissioner.

Daniel J. Lyne, of Boston, Mass. (Albert L. Hyland, William A. Ryan, and Lyne, Woodworth & Evarts, all of Boston, Mass., on the brief), for Arthur O'Keeffe.

Before MAGRUDER and MAHONEY, Circuit Judges, and SWEENEY, District Judge.

MAGRUDER, Circuit Judge.

In this petition for review the Commissioner challenges the correctness of a de-cision of the Board of Tax Appeals which determined (with a negligible exception not now in issue) that there were no deficiencies in the income taxes paid by Arthur O'Keeffe for the years 1934, 1935 and 1936. The dispute is whether Mr. O'Keeffe is taxable on the income of a certain trust created by him, either under § 22 (a), § 166 or § 167 of the Revenue Acts of 1934 and 1936, 48 Stat. 680, 686, 729; 49 Stat. 1648, 1657, 1707, 26 U.S.C.A. Int.Rev.Acts, pages 669, 825, 26 U.S.C.A. Int.Rev.Code, §§ 166, 167.[1]

So far as appears from the stipulation the only fact of importance bearing on the taxability of the income is the trust instrument itself.

Mr. O'Keeffe set up the trust in 1932. The trust is to continue until July 1, 1947, at the end of which time the principal is to be returned to the donor. "If the Donor shall not be living at that time, the principal shall be distributed as the Donor may have by deed or will appointed"; in default of appointment there are remainders over to Mr. O'Keeffe's issue, failing which, to his widow and his then living brothers and sisters in equal shares (the lawful issue of any deceased brother or sister to take the parents' share by right of representation); "in the event of failure of all the foregoing, the principal shall be delivered to such persons as may at that time be the heirs-at-

---

[1] "§ 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * *"

"§ 166. Revocable trusts

"Where at any time the power to re-vest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

"§ 167. Income for benefit of grantor

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or * * *
then such part of the income of the trust shall be included in computing the net income of the grantor.

"(b) As used in this section the term 'in the discretion of the grantor' means 'in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question.' "

These sections were identical in both acts.

law of the Donor". The trustees are authorized "by unanimous action in cases of serious illness or other grave emergency to disburse to any beneficiary such portion of the principal of the Trust Fund as the Trustees may in their absolute discretion believe necessary".

During the term of the trust the net income is to be paid in quarterly instalments to the donor's wife during her life; on her death, to the issue of the donor; failing which, to the donor himself; and if the donor be not then living, in equal shares to the brothers and sisters of the donor and their lawful issue by right of representation.

The trustees named in the instrument are four in number, the donor and his three brothers. With the exception of the emergency clause previously mentioned, all decisions of the trustees are to be made by a majority of their number. They are given wide authority in the management of the trust corpus.[2] The trustees by unanimous action may appoint one additional trustee. It is further provided that "Any Trustee hereunder shall be responsible only for his own neglect or default".

The Commissioner ruled that all the income of the trust for the tax years in question was taxable to the donor. His notice of deficiency relied on § 166 only. Before the Board, the Commissioner's only specific reliance was on § 166, though his brief quoted Reg. 86, Art. 166-1, and Reg. 94,

Art. 166-1, which foreshadowed Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. However, § 22 (a) of the revenue act was not specifically referred to, and certainly in the proceedings before the Board no sharp issue was drawn as to the applicability of this section. The Board's decision, which came down a few days after the Clifford case was decided, took note of that case as follows: "If there are facts here justifying the conclusions reached in Helvering v. Clifford, [309] U.S. [331, 60 S.Ct. 554, 84 L.Ed. 788] (February 26, 1940) they have not been specified or urged by respondent and any contention that section 22 (a) is applicable could as readily be characterized here as 'ground which the taxpayer had every reason to think was abandoned' as in Helvering v. Wood, supra [309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796]. On the authority of that case, respondent's determination in this respect is disapproved."

Promptly, the Commissioner moved the Board for reconsideration on the strength of the newly decided Clifford case and § 22 (a) as there applied. This motion was denied without comment.

▮ Clearly the Commissioner is not now foreclosed from urging that the income is taxable under § 22 (a). Hormel v. Helvering, March 17, 1941, 61 S.Ct. 719, 85 L.Ed. —. In his brief before us the Commissioner states: "If, on the facts as stipulated, the Clifford case sustained the Com-

---

[2] Article VII of the trust agreement provided:

"The Trustees, in addition to and not in limitation of all common law and statutory authority, shall have the following powers with regard to both the real and personal property in the Trust Fund and to any part thereof: to mortgage, to lease with or without option to purchase, and to sell in whole or in part at public or at private sale, without approval of any court and without liability upon any person dealing with the Trustees to see to the application of any money or other property delivered to them; to exchange property for other property; to invest and reinvest in securities or properties although of a kind or in an amount which ordinarily would not be considered suitable for a trust investment, and/without limiting the generality of the foregoing, to acquire and/or to hold any amount of stock and/or other securities of First National Stores, Inc.; to keep any or all securities or other property in the name of another person or corporation, with or

without a power of attorney for their transfer attached, or in their own names or in the name of any one of them, without disclosing their or his fiduciary capacity; to determine who are the distributees hereunder and the proportions in which they shall take; to make payments of principal or income direct to and to deal otherwise with minors hereunder as though they were of full age; to make distributions or divisions of principal hereunder in property held in trust at values determined by them, to determine what shall be charged or credited to income and what to principal notwithstanding any determination by the courts: to pay, compromise or contest any claim or other matter directly or indirectly affecting this Trust Fund; to employ counsel for any of the above or other purposes; and generally to do all things in relation to the Trust Fund which the Donor could do if this trust had not been executed. All divisions and decisions made by the Trustees in good faith shall be conclusive on all parties in interest."

missioner's contention in that respect, the Board should have so held, or, at most, have given the taxpayer and the Commissioner an opportunity to present any additional evidence that the Clifford decision might have rendered important."

■ On the face of the trust instrument, the present case is obviously a weaker one than the Clifford case for a finding that the donor remains in substance the owner of the corpus, despite the formal conveyance to trustees. For instance, in the present case, the trust is bound to last for fifteen years, whereas in the Clifford case, a maximum term of five years might be shortened by the earlier death either of the donor or his wife, the sole beneficiary.[3] Furthermore, the donor here is only one of four trustees, whereas in the Clifford case he was sole trustee. Nor are the trustees here protected by as sweeping an exculpatory clause as in the Clifford case. But the outer limits of the doctrine of Helvering v. Clifford have not yet been authoritatively determined. In view of Hormel v. Helvering, supra, and its companion case, Helvering v. Richter, 61 S.Ct. 723, 85 L.Ed. ——, the thing for us to do is to remand the case to the Board for specific consideration of the applicability of § 22 (a), regard being had to the terms of the trust as a whole and to any additional evidence which either party may wish to introduce as bearing on this issue.

■ As to § 166, the original contention of the Commissioner, set forth in his deficiency letter, was that the income of the trust was taxable to the donor because of the provision in the instrument that the corpus was eventually to revert to him. But Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796, ruled that a mere reversion is not a power to revest the corpus in the grantor within the meaning of § 166.

■ The Commissioner further argued before the Board, and before us, that § 166 applies because of the provision in the trust instrument authorizing the trustees by unanimous action in case of "serious illness or other grave emergency" to disburse to any beneficiary (the donor being one) such portion of the principal as the trustees in their absolute discretion might believe necessary. To sustain this contention the Commissioner must show that the other trustees, whose concurrence is necessary, do not have "a substantial adverse interest" in the disposition of the corpus. We assume in favor of the Commissioner, without deciding, that the somewhat remote contingent interest of each trustee does not constitute a substantial adverse interest within the meaning of § 166. See Fulham v. Commissioner, 1 Cir., 110 F.2d 916, and Commissioner v. Prouty, 1 Cir., 115 F.2d 331. But the further difficulty remains that the power to revest the corpus in the grantor cannot be said to be "vested" in Mr. O'Keeffe and his co-trustees where, as here, its exercise is contingent upon the happening of a future event over which the grantor has no control and which may never come to pass. Corning v. Commissioner, 6 Cir., 104 F.2d 329, 332. The holding in the Corning case was approved but distinguished in Helvering v. Dunning, 4 Cir., March 10, 1941, 118 F.2d 341, where the grantor reserved an unqualified power to revoke the trust on or after a fixed date in the future.

■ An argument under § 167 is advanced for the first time in this court. Referring to the power in the trustees "to determine what shall be charged or credited to income and what to principal notwithstanding any determination by the courts", the Commissioner contends that the trustees have power to classify the entire income of the trust as principal and accumulate it for fifteen years, after which it would all be turned over to Mr. O'Keeffe, the grantor; hence the income, in the discretion of the grantor, may be "held or accumulated for future distribution to the grantor" within the meaning of § 167. Perhaps we should not consider the point (see the discussion in the Hormel case); but if it is open, we think it is not well taken. Obviously the quoted provision in the trust instrument is not to be read so literally as to empower the trustees to deprive Mrs. O'Keeffe of all income during the life of the trust. The trustees are merely authorized to make allocations as between principal and income where the proper allocation is a matter of honest doubt. Cf. American Security & Trust Co. v. Frost, App.D.C., 117 F.2d 283, 285, 286; 52 Harv.L.Rev. 1369. The income now involved is ordinary dividends on corporate stock. A court of equity would call the trustees to account if they undertook to

---

[3] Cf. § 20(1)(b) of the English Finance Act of 1922 (12 & 13 Geo. V, c. 32) taxing the income to the donor of a trust which "cannot exceed six years."

treat this as principal. Under a fair reading of the trust instrument the trustees are required to pay out such income to Mrs. O'Keeffe, the wife of the donor, in quarterly instalments.

The decision of the Board of Tax Appeals is vacated in so far as it determines that there are no deficiencies for 1934, 1935 and 1936 in excess of the respective amounts of $1,163.82, $14.37 and $17.90, and the case is remanded to the Board for further proceedings in conformity with this opinion.