114 So.2d 268

Alex A. MARKS et al.

v.

Jule R. BRIGHTWELL and First National Bank of Montgomery, Executors, et al.

3 Div. 853.

Supreme Court of Alabama.

June 25, 1959.

Rehearing Denied Aug. 20, 1959.

Jones, Murray & Stewart; Robt. E. Varner, Montgomery, for appellants.

Ball & Ball and John R. Matthews, Jr., Montgomery, for appellees.

MERRILL, Justice.

This appeal is from a decree based upon a petition of the executors of the estate of Guy R. Brightwell, deceased, requesting instructions on various questions encountered in the administration of the estate, a demurrer, plea, answer and cross-petition of appellants.

Ethel Marks Brightwell died in 1922, leaving a will in which she left certain real and personal property to her husband, Guy R. Brightwell, hereinafter referred to as Brightwell, for life, with remainder to her brother, William Marks, if living, or if not living, to his children. The children of William Marks are the appellants in this cause. Certain specific bequests were also made in the will and the residue of the estate went to Brightwell. The will named Brightwell executor without being required to make a bond, inventory, report or returns, and gave him the power of sale of the property for reinvestment in which he held a life estate.

It is conceded that the following property passed to Brightwell, for life, with remainder to appellants: (1) Registered Liberty Bonds, 4th Series, par value $35,000; (2) a residence at 420 Bibb Street in Montgomery; (3) undivided interests in four parcels of commercial real estate in Birmingham.

Brightwell died August 9, 1957. His will was admitted to probate in September and letters testamentary were issued to his second wife, Jule R. Brightwell, and the First National Bank of Montgomery, hereinafter referred to as appellees.

The petition for instructions filed by appellees concerned bequests in both the will of Ethel Brightwell and the will of Guy R. Brightwell, and the decree dealt with other bequests not discussed in this opinion. This appeal concerns only those parts of the decree of the lower court affecting the property which was devised to appellants as remaindermen. The other devisees and interested parties did not appeal.

Appellees sought instructions on, among others, the following questions:

1. Were the owners of the remainder in the Liberty bonds entitled to all the interest thereon, becoming due since the death of Guy R. Brightwell?

2. Were appellants entitled to reimbursement from Brightwell's estate for funds used by him as life tenant from the corpus of the life estate in improving the life estate?

3. Should rents on property held by Brightwell for life have been apportioned

to the date of his death between the estate of Brightwell and the remaindermen?

Appellants filed a demurrer raising the question that the Ethel Brightwell estate should be settled independently of the Guy R. Brightwell estate, and an answer and cross-bill alleging that Ethel Marks Brightwell, at her death, owned $5,500 worth of Victory Liberty Loan notes which passed for life to Guy R. Brightwell with remainder to appellants and should be accounted for; that neither the expenses for improvements to the property nor the tax on the Laura Marks estate, all as shown on said Guy R. Brightwell's memorandum, should have been charged to the corpus of the life estate and that those amounts should be paid to appellants; that all the assets held by Brightwell for life, with remainder to appellants, were not assets of the Guy R. Brightwell estate but were, under the provisions of the will of Ethel Brightwell, a part of her estate held by Guy R. Brightwell during his lifetime in a dual capacity as trustee (by virtue of his being life tenant with the appellants remaindermen) and as executor (by virtue of the provision in the will that the life estate property should be held in Ethel Marks Brightwell's estate until Guy R. Brightwell's death); and that all assets found by the court to have belonged to the estate of Ethel Marks Brightwell, at the death of Guy R. Brightwell, should be given appellants.

The guardian ad litem appointed by the court to represent the interest of any minors possibly interested filed a plea raising, among other things, the issue of applicability of the statute of non-claim (Tit. 61, § 214, Code 1940). Appellants filed their answer and cross-bill in this cause after the expiration of the six months period from the date of the issuance of letters testamentary in the estate of Guy R. Brightwell.

Appellants contend that the trial court erred when it (1) overruled the demurrer, and after a hearing, (2) denied appellants' cross-bill seeking an accounting from Guy R. Brightwell's estate of that property held

by him for life with remainder to appellants; held that (3) appellants were not entitled to all the interest on certain bonds, but that Brightwell's estate should receive the pro rata interest accrued up to the time of his death, (4) appellants were not entitled to reimbursement for funds used by Brightwell to improve the life estate, (5) appellants were not entitled to rents for the month in which the life tenant died which were collected prior to his death, though a portion was earned between the date of his death, August 9, and August 31, 1957.

The first assignment of error charges that the court erred in overruling the demurrer which was based on the theory that the Ethel Brightwell estate should be settled separately from the Guy R. Brightwell estate. The question presented by this assignment is not whether appellants were entitled to an accounting; but whether they were entitled to a separate accounting under Tit. 61, § 320, primarily, and Tit. 61, Article 17, Chapter 2, Subdivision 3, generally.

Appellees have not attempted to withhold an accounting from appellants. Immediately after Brightwell's death, they made available to appellants all memoranda and information in their possession. In addition to this, the original petition in effect seeks to account to the appellants for the proceeds of the sales of the properties held by Brightwell for life, and also seeks settlement of any liability which Brightwell's estate might then owe to appellants arising out of such transactions. All the parties are before the court in this equity proceeding and appellants could certainly obtain all the relief in equity that they could have obtained at law. Furthermore, the petition reflects, and appellants concede in brief, that it would have been impracticable for appellees to account for Brightwell's acts outside of the proceeding relating to his own estate for the reason that the funds of the fiduciary account have been commingled with the personal funds of the deceased fiduciary and his personal representatives have in good faith taken possession of the commingled property. In

view of the fact that all the proceedings were before the equity court and that court could give all necessary relief, the demurrer was properly overruled.

■■ The next question can be treated under two headings—(1) The $5,500 Victory Loan notes and (2) The Bibb Street Property.

(1) In her will, Ethel Brightwell provided:

"I give and bequeath to my husband, Guy R. Brightwell, for the use of his natural life, the use, benefit, rentals and returns from all real estate that I may own at time of my death, excepting that specifically disposed of in other clauses of this will, and also the use, interest and returns from the Registered Liberty Bonds (or funds invested in them which may be invested in other securities later) I may own at time of my death. My husband to have full benefit of said real estate and bonds during his life, with the privilege of selling the same, either or both, for reinvestment, if for any reason he at any time may consider a sale or exchange advisable. The properties or collaterals bought with money received from sale of real estate or bonds belonging to my estate, shall be designated or bought in name of my estate. My husband shall have full benefit of the real estate properties and bonds, with right to lease the real estate to tenants and execute leases for definite terms of reasonable lengths, as if he owned the properties outright; such leases to enable the lessees reasonable lengths, as if he owned the properties outright; such leases to enable the lessees to hold the properties for terms specified in them. At the death or time of death of my husband, the title to the said real estate and bonds or to the property or securities bought with proceeds of them, I direct shall go in fee simple to my brother, William M. Marks, if he then be living or to his children, share

and share alike, if he is no longer living."

Ethel Brightwell actually owned and had registered in her name $35,000 in Fourth Liberty Loan Bonds which, according to memoranda and papers found in Brightwell's safety deposit box, were exchanged for coupon bonds in January, 1923, and still later invested in four municipal bonds with a total par value of $35,000, which have been continuously held by Brightwell and which the court has now awarded to appellants; also $5,500 in Victory Loan notes which were redeemed in 1923. Evidently, these notes were redeemed to pay off a legacy to the Working Woman's Home of Montgomery. Appellants contend that these notes were also "registered bonds" and the life tenant should have preserved them or their proceeds as he did the $35,000 in Liberty Loan Bonds.

The trial court did not assign a reason for ordering the appellees to refuse this claim of appellants', but both sides concede that it was probably on the ground that appellants did not comply with the statute of non-claim, Tit. 61, § 211, Code 1940. If Brightwell misapplied the Victory Loan notes, and we do not hold that he did, he committed a devastavit. The commission of a devastavit by an executor or trustee at common law is a tort. Davis v. State, 237 Ala. 143, 185 So. 774; Fretwell v. McLemore, 52 Ala. 124, at page 143. Therefore, the claim of appellants was due to be filed and presented within six months after the grant of letters or they were barred. Tit. 61, § 211, Code 1940; Moore v. Stephens, 264 Ala. 86, 84 So.2d 752. The appellants were notified of Brightwell's disposition of the $5,500 immediately after his executors learned of it, and since no suit or claim was filed within the six months provided by the statute, the claim is now barred.

It is clear from our cases that where a deceased executor or trustee has committed a devastavit with respect to properties held by him as executor or trustee, or where

he has commingled the estate properties with his own in such manner that they cannot be specifically identified, a claim based on such acts must be presented within the non-claim period. Rhodes v. Hannah's Administrator, 66 Ala. 215; Taylor v. Robinson, 69 Ala. 269; Esslinger v. Spragins, 236 Ala. 508, 183 So. 401; 21 Am.Jur. 581, Executors and Administrators, § 353. We find no error in the holding as to the Victory Loan notes.

■ (2) The Bibb Street Property— According to one of the memoranda left by Brightwell, he sold property on Bibb Street for $8,500 and expended part of it as follows: (all of which appellants contend was not authorized) $3,266.17, one-fourth of cost for replacement of burned building on 1st Avenue in Birmingham in which the Ethel Brightwell estate owned a one-half interest; $3,010.39, one-half the cost of rebuilding on 4th Avenue in Birmingham which was required by the other joint owner; $855 paid for rebuilding on a condemned building on Morris Avenue in Birmingham. On one of the memoranda left by Brightwell, and following the listing of these expenditures, he wrote:

"All of the building expense was incurred to meet with wishes of joint owners, who likewise paid their portions, none could be avoided. I had to pay also for putting in new front in order to obtain tenants for building at 1810–12 3rd Ave. B'ham. owned with Samuel Marks, which had been vacant, the amount of $4607.51 at one time, but against which no charge against Ethel Brightwell estate has been entered. Other building repair expenses have been absorbed by me, throughout time. There was no sounder way to invest funds than to improve to save buildings; and the ownership plan could not be preserved without doing so."

We note in passing that Brightwell left his individual one-fourth interest in two of the Birmingham parcels to the three living children of William M. Marks (appellants) rather than to members of his own family.

Appellees contend that Brightwell's use of the proceeds of the Bibb Street property to repair and maintain the Birmingham property was authorized under the will of Ethel Brightwell because he was given the "full benefit of the real estate" and was more than a mere life tenant. It is not necessary that we decide that question because the demand for accounting and reimbursement is barred by the statute of non-claim as was the claim relative to the $5,500 in Victory Loan notes.

■■ Lastly, appellants argue that the trial court erred in prorating the interest and rents as it did. As to interest, the trial court decreed:

"As to Question 2, the court is of the opinion that the interest on said bonds described in paragraph 3(A) above shall be prorated between testator's estate and the Marks family so that the estate receive that part of the interest earned or accrued up to and including the date of testator's death and the Marks family that portion accruing thereafter."

This point has never been specifically decided by this court. Most jurisdictions allow interest to be apportioned. In 33 Am. Jur., Life Estates, Remainders and Reversions, § 295, we find:

"Except where an instrument under consideration evidences a contrary intent, it is uniformly held that interest, at least if not represented by coupons, is apportionable in respect of time, as between persons successively entitled; for it is said that, although payable only periodically, interest accrues de die in diem (from day to day). Under this principle, interest has been held to be apportionable as between life tenant and remainderman in many cases. Apportionment will be denied, however, where the apportionment of interest as between persons successively entitled would be contrary to the intent of the instrument upon which their rights are founded, unless, of course, statutes nevertheless result in apportionment."

Annotation, 126 A.L.R. 32 II. As for interest on coupon bonds, 33 Am.Jur., Life Estates, etc., § 296, states:

"In most jurisdictions, the courts have regarded the general rule in reference to the apportionment of interest as applicable between persons successively entitled, even though the obligation to pay interest is represented by coupons."

And no distinction is generally made between interest on government and municipal bonds and other interest, 126 A.L.R. 39. But the rule is different as respects annuities. Annotations, 116 A.L.R. 135 II., 126 A.L.R. 16; see Frazer v. First National Bank of Mobile, 235 Ala. 252, 178 So. 441, 126 A.L.R. 1.

The Uniform Principal and Income Act does not apply to the instant case because the transaction was effected before the statute was enacted. Dillard v. Gill, 254 Ala. 5, 47 So.2d 203; Toolen v. Amos, 259 Ala. 346, 67 So.2d 8. We do note that Tit. 58, § 78, Code 1940, does provide for such proration of interest as is here before us. We find no error in the proration of interest as allowed by the decree of the lower court.

◼ As to the rents, appellees concede "that a rule allowing proration of rents would be the fairer one." Brightwell had rented the Birmingham real estate under leases providing that rents were to be paid monthly in advance. He died on August 9, 1957, and the August rents had already become due and payable, and the trial court awarded all such rents to his estate. It would seem that this action was justified by Tit. 31, § 14, Code 1940, which reads:

"When a tenant for life shall demise any lands and shall die on or after the day when any rent becomes due and payable, his executors or administrators may recover from the under-tenant the whole rent due, but if any such tenant for life shall die before the day when any rent is to become due, his executors or administrators may recover the proportion of rent which ac-crued before his death, and the remainderman shall recover for the residue."

In Jones v. Scott, 249 Ala. 336, 31 So.2d 361, 363, a remainderman of certain real estate sued a tenant for rents on lands which the tenant had leased from the life tenant. Following the death of the life tenant, the tenant had paid rents to his administrator, and therefore, contended that he had made payment to the party entitled to such rents. A question for determination was whether the estate of the life tenant or the remainderman was entitled to the rent. As for the advance rents which became due and payable before the death of the life tenant, the court noted:

"The rent for September was payable in advance, and the life tenant died after it became due for that month, so that for September 1941, it was due to be paid to the administrator of W. R. Scott (the life tenant), as was done."

It appears that the statute and the cited case support the denial by the trial court of proration of rents which were due and payable before the death of the life tenant.

It results that the decree of the lower court is due to be affirmed.

Affirmed.

LAWSON, STAKELY and GOOD-WYN, JJ., concur.

On Rehearing.

MERRILL, Justice.

Appellants state that the only purpose of asking for a rehearing is to request an extension of our opinion to cover points which we did not decide on original deliverance.

We held that the claims of appellants relative to the $5,500 Victory Loan notes and the use of the proceeds from the sale of the Bibb Street property for the preservation and maintenance of other property were barred by the statute of nonclaim. Appellants concede that our decision is controlling as to them, but state that "it would not be controlling against a claim filed by

a minor heir of William Marks against this estate." Such a claim has been filed by a minor acting by his guardian.

Admittedly, a decision on the questions of whether Guy R. Brightwell committed devastavits when he (a) used the proceeds of the sale of the Bibb Street property for the improvement of the Birmingham real estate, and (b) used the proceeds of the Victory Loan notes in satisfaction of the legacy to the Working Woman's Home, will expedite the settlement of the estates and avert a suit to have the same question decided which has already been argued before us. Appellees also agree that these questions should be answered.

We, therefore, conclude that our original opinion should be extended to hold that Brightwell did not commit devastavits when he (a) used the proceeds of the sale of the Bibb Street property for the improvement of the Birmingham real estate, and (b) used the proceeds of the Victory Loan notes in satisfaction of the legacy to the Working Woman's Home.

LAWSON, STAKELY and GOODWYN, JJ., concur.