276 So.2d 141

Douglas P. CORRETTI, as Administrator Ad IItem of Estate of Margaret Gage Bush, Deceased

v.

The FIRST NATIONAL BANK OF BIRMINGHAM, as Trustee under the WIII of Morris W. Bush, Deceased, et al.

SC 159.

Supreme Court of Alabama.

April 5, 1973.

---

Abe Berkowitz, Jackson M. Payne, Birmingham, Sydney R. Prince, III, Mobile, for appellees Gage Bush Englund and Sydney R. Prince, III as Executors Under the Will of Margaret Gage Bush and Gage Bush Englund, Individually.

Lucien D. Gardner, Jr., and E. T. Brown, Jr., Birmingham, for appellee The First National Bank of Birmingham as Trustee under the Will of Morris W. Bush.

Corretti, Newsom, Rogers, May & Calton, Birmingham, for Douglas P. Corretti, Administrator Ad Litem of the Estate of Margaret Gage Bush, deceased, for appellant.

PER CURIAM.

This appeal challenges a decree of the Circuit Court of Jefferson County, in Equity, in regard to the sources from which compensation is to be paid to a testamentary trustee.

Morris W. Bush died on January 24, 1932. His will was duly admitted to probate by the Probate Court of Jefferson County on February 10, 1932.

The First National Bank of Birmingham was appointed both executor and trustee. For the purposes of this appeal, November 6, 1933, is treated as the day on which the order was rendered by the Probate Court authorizing The First National Bank of Birmingham as executor to deliver to itself as trustee the assets of the residuary estate of Morris W. Bush, deceased, and as the day on which the transfer was made. In other words, we will treat the trust as having been funded or established for implementation on November 6, 1933.

On the day that the trust was established, Mrs. Margaret Gage Bush, the widow of Morris W. Bush, was the sole beneficiary and was entitled to receive all of the net income from the trust estate.

Mrs. Margaret Gage Bush died on June 27, 1971. At the time of her death Mrs. Gage Bush Englund, the daughter of Morris W. and Margaret Gage Bush, became the sole income beneficiary of the said trust estate under the terms of the will of Morris W. Bush.

The will, the trust instrument, provided that the trustee be compensated for its services as follows:

" . . . a sum equivalent to five per cent (5%) of the gross income from the trust estate as and when such income is disbursed or distributed [current compensation] plus an additional sum at the end of each ten (10) year period figured from the date of the establishment of this trust equivalent to two percent of the reasonable value of the principal of the Trust Estate at the time such additional payment is payable, [hereinafter referred to as ten-year compensation], all of such compensation to be deducted from the income of the trust estate."

We are concerned here only with the ten-year compensation.

November 6, 1943, was the first date that the ten-year compensation was payable to the trustee under the literal language of the provisions of the will above quoted. It was deducted by the trustee from the income of the then life beneficiary, Mrs. Margaret Gage Bush in several installments during the years 1943 and 1944.

On February 27, 1948, the head of the trust department of the trustee bank wrote Mrs. Bush, the then life beneficiary, pointing out the large amounts which had been deducted from her income over a limited number of years in order to pay the trustee its ten-year compensation due and payable on November 6, 1943. In that letter, the trust officer suggested that the trustee begin to set up a reserve for the purpose of reducing the burden on Mrs. Bush of paying the ten-year compensation in any one year. The trust officer further suggested

to Mrs. Bush that the reserve be spread over a period of six or seven years and advised her that the reserve could be invested with the income therefrom paid to Mrs. Bush until the ten-year compensation was actually due and paid. Mrs. Bush gave her written approval to the suggestions made to her in the trust officer's letter of February 27, 1948.

The plan for spreading the ten-year compensation which was finally adopted by the trustee was not the plan suggested in the letter of February 27, 1948.

The plan which the trustee adopted for that purpose called for Mrs. Bush to pay the ten-year compensation that would be due on November 6, 1953, and each ten-year period thereafter in ten annual installments, by deductions out of income during each of the five years preceding the due date of the compensation and each of the five years following the due date. The five annual installments payable prior to the due date were based on the amount of the ten-year compensation on the last preceding due date, and were each one-tenth of that amount. When the due date of the ten-year compensation arrived, the actual amount of the compensation would be determined based on the fair market value of the corpus at that time. The sum of the five annual installments which had been paid would be deducted from the amount of the compensation as so computed, and the balance of the compensation would be divided into five annual installments and deducted from income in the succeeding five years.

The plan as adopted was set out in a memorandum of the trust department of the trustee bank dated March 31, 1948. It is apparent from the memorandum that its author was of the opinion that it was within the scope of the suggestions made by the trust officer in his letter to Mrs. Bush under date of February 27, 1948, which suggestions, as shown above, met with the approval of Mrs. Bush. But Mrs. Bush did not expressly give her approval to the plan set out in the interoffice memorandum of March 31, 1948.

The trustee began to implement that plan in May, 1948, and continued to follow it with respect to the ten-year compensation. From the time the plan was implemented in May, 1948, until Mrs. Bush's death, the trustee rendered regular reports to her showing the deductions of compensation. There is nothing to indicate that Mrs. Bush ever objected to that method of paying the trustee the ten-year compensation.

The reasonable value of the principal of the trust has increased in each ten-year period. The ten-year compensation, therefore, has been larger in each successive ten-year period. As a consequence, the amount of each installment deducted from Mrs. Bush's income during the five years preceding the due date was less than the amount of each of the five installments deducted after the payment date.

The amount of the ten-year compensation payable November 6, 1963, was $125,459.28. That compensation was deducted by the trustee out of income pursuant to the plan, the last deduction being made May 6, 1968.

The next date on which the ten-year compensation will be due is November 6, 1973. Pursuant to the plan, the trustee deducted out of income with respect to the ten-year compensation that will be due it in 1973, the sum of $12,545.95 in each of the years 1969, 1970 and 1971. As a result of such deductions and partial payments, Mrs. Margaret Gage Bush contributed during her lifetime out of income of the trust estate otherwise payable to her the sum of $37,637.85 toward the payment of the ten-year compensation which will be due the trustee on November 6, 1973.

After the death of the first life income beneficiary, Margaret Gage Bush, the succeeding life income beneficiary Gage Bush Englund in her individual capacity made

known to the trustee bank that she took the position that the expense of the ten-year compensation which will be due under the provisions of the trust instrument on November 6, 1973, should be apportioned between the estate of Mrs. Margaret Gage Bush and herself on the basis of their respective life interests during the period from November 6, 1963, to November 6, 1973; that the estate of Margaret Gage Bush should bear its said portion of such expense; and, that no part of such portion should be deducted from the income of the trust estate earned or accrued after June 27, 1971, the day on which Margaret Gage Bush died, which is due to be paid to Gage Bush Englund as the succeeding life income beneficiary.

The trustee bank being in doubt as to whether the estate of Margaret Gage Bush should pay any portion of the ten-year compensation for the period beginning November 6, 1963, and ending November 6, 1973, and being in doubt as to the portion of such compensation to be borne by Gage Bush Englund from the income of the trust estate earned and accrued since June 27, 1971, instituted this proceeding against Gage Bush Englund and Sydney R. Prince, III, as executors of the will of Margaret Gage Bush, deceased, to secure instructions and declarations as to how to properly administer the trust in regard to the ten-year compensation for the period of time last above mentioned, and in another respect not involved on this appeal.

The respondents Gage Bush Englund and Sydney R. Prince, III, having advised the trustee bank, the complainant, that they felt disqualified to represent the estate of Margaret Gage Bush as co-executors in this litigation because the interest of Gage Bush Englund and her attorney Sydney R. Prince, III, were adverse to the interest of the estate of Margaret Gage Bush, the complainant requested the court to appoint an administrator ad litem to represent the estate of Margaret Gage Bush in this particular suit.

This request was granted and the trial court promptly appointed Douglas P. Corretti, Esquire, a distinguished member of the Jefferson County Bar to serve as administrator ad litem of the estate of Margaret Gage Bush in this litigation.

The administrator ad litem filed an answer wherein he denied all the allegations of the bill of complaint and demanded strict proof thereof.

The respondent Gage Bush Englund, in her answer, admitted all of the matters contained in the stating part of the bill and although her position in regard to sources from which the compensation payable to the trustee bank on November 6, 1973, should be paid was alleged in the bill of complaint, she affirmatively alleged in her answer as follows:

"The Respondent affirmatively alleges that the expense of the ten-year compensation that will be due the complainant on November 6, 1973, is equitably due to be apportioned between the Estate of Mrs. Margaret Gage Bush and the Respondent on the basis of their respective life interests during the period November 6, 1963, to November 6, 1973, and that the Estate of Margaret Gage Bush is equitably due to bear its portion of such expense, and no part of such portion is equitably due to be deducted out of the income of the Trust Estate earned or accrued after June 28, [27] 1971, and payable to Respondent as the succeeding income beneficiary."

The respondent Sydney R. Prince, III, did not answer. He was one of the attorneys who filed the answer on behalf of the respondent Gage Bush Englund, and he represented her in her individual capacity in the trial below. He had represented her previously. It was because of such representation that he felt disqualified from representing the estate of Margaret Gage Bush as co-executor in this litigation.

The testimony was taken ore tenus. Only one witness was examined, Jack G.

Paden, an executive vice president and head of the trust department of the trustee bank.

The trial court rendered a decree which as duly modified "Ordered, Adjudged and Decreed," in part, as follows:

"3. The expense of the compensation that will be due complainant on November 6, 1973, for the ten-year period November 6, 1963, to November 6, 1973, based on two percent of the reasonable value of the principal of the trust estate on November 6, 1973, should be and is hereby apportioned between the Estate of Margaret Gage Bush and the respondent Gage Bush Englund on the basis of the duration of their respective life interests during said ten-year period.

\* \* \*

The administrator ad litem has appealed to this Court from the original decree and from the decree which modified the original decree. See Equity Rule 62.

The administrator ad litem will be referred hereinafter as the appellant. He has made five assignments of error which are properly argued together in brief filed here on his behalf in that they present the single question, (Alabama Power Co. v. King, 280 Ala. 119, 190 So.2d 674) did the trial court err in apportioning the ten-year compensation which will be due the trustee bank on November 6, 1973, between the estate of Margaret Gage Bush and the respondent Gage Bush Englund on the basis of the duration of their respective life interests during the ten-year period from November 6, 1963, to November 6, 1973.

■ As a general principle when a trustee is in doubt as to the extent of his powers or as to the proper manner in which to proceed under the trust, he may apply to a court of equity which will interpret the trust instrument if it is ambiguous, uncertain in its meaning or difficult and embarrassing in its interpretation. Gilmer v. Gilmer, 245 Ala. 450, 17 So.2d 529 and cases cited; Sanderson v. Gabriel, 246 Ala. 493, 21 So.2d 256; Riley v. Wilkinson, 247 Ala. 231, 23 So.2d 582; Kimbrough v. Dickinson, 247 Ala. 324, 24 So.2d 424; Peach v. First Nat. Bank of Birmingham, 247 Ala. 463, 25 So.2d 153; Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726.

■ The compensation fixed by a trust instrument is subject to judicial construction in doubtful cases. Birmingham Trust & Savings Co. v. Hightower, 233 Ala. 39, 169 So. 878; Home Oil Mill v. Willingham (D.C.Ala.) 68 F.Supp. 525. The court must determine as best it can the meaning of the trust provision in question by seeking to ascertain the intention of the settlor for his intent and purpose is the law of the trust. Thurlow v. Berry, supra. See In Re Erickson's Estate, 184 Misc. 830, 56 N.Y.S.2d 707.

■ But where there is no bona fide doubt as to the true meaning and intent of the provisions of the instrument creating the trust or as to the particular course which the trustee should pursue, there is no need for court action. Birmingham Trust & Savings Co. v. Cannon, 204 Ala. 336, 85 So. 768; Hoglan v. Moore, 219 Ala. 497, 122 So. 824. That rule applies in declaratory judgment proceedings as well as in cases where the interpretation is sought under the general authority of equity courts over trusts. Merchants National Bank of Mobile v. Cowley, 265 Ala. 125, 89 So.2d 616; Roberts v. Roberts, 269 Ala. 441, 114 So.2d 139.

We entertain the view that the provisions of the trust instrument which pertain to the time and source of payment to the trustee bank of the ten-year compensation are so uncertain and difficult of interpretation that a court of equity should intervene to give guidance and direction to the trustee. The right of the trustee to obtain

the instructions and declarations for which it prayed was not questioned in the trial court nor is that right challenged here.

We come to a consideration of the sole question before us which as indicated above is whether the trial court erred in apportioning the expense of the ten-year compensation that will be due the trustee on November 6, 1973, between the estate of Mrs. Margaret Gage Bush (the first life beneficiary) and Mrs. Gage Bush Englund (the succeeding life beneficiary) on the basis of their respective life interests during the period November 6, 1963, to November 6, 1973.

The appellant takes the position that Mrs. Gage Bush Englund should bear the entire cost, saying, in brief:

" . . . the administrator's position is that all of the two percent (2%) ten (10) year bonus compensation must 'be deducted from the income of the trust estate' *generated after the ten (10) year anniversary date, which in this case is November 6, 1973.* Otherwise, the trustee's two percent (2%) ten (10) year compensation would have to come out of the personal assets of the life beneficiary or as in the case at hand, from the assets of the estate of the deceased life beneficiary. There is no way of telling whether or not any of the present assets of the estate of Margaret Gage Bush were derived from income generated from the trust or whether or not they were generated by sources separate and apart from the trust income. For aught that appears, Margaret Gage Bush may have lived off the trust income and conserved her separate and private estate. Once income was paid to Mrs. Bush, said income lost its identity as such and was merged into Mrs. Bush's personal estate." (Emphasis supplied.)

We do not agree with that contention.

■ In its simplest elements a trust is a confidence reposed in one person, the trustee, for the benefit of another, with respect to property held by the trustee for the benefit of the cestui que trust. Teal v. Pleasant Grove Local Union No. 204, etc., 200 Ala. 23, 75 So. 335.

■ It is the duty of the trustee not only to hold and manage the trust property for the beneficiary but to disburse the proceeds of the trust estate to the beneficiary according to the terms of the trust. Teal v. Pleasant Grove Local Union No. 204, etc., supra.

■ For the performance of the duties imposed by the trust instrument, the trustee is entitled to be compensated in accordance with the provisions made therefor in the trust instrument. Seiple v. Mitchell, 239 Ala. 533, 195 So. 865.

It is not provided in the trust instrument that the current compensation is only to compensate the trustee for the performance of its duties in connection with the disbursement of income to the life beneficiary or that the ten-year compensation is to compensate the trustee only for carrying out its duties in regard to the holding and management of the trust property. The trustee is compensated in the two ways for performing all of the duties imposed upon it by the trust instrument.

At the time of her death, Mrs. Margaret Gage Bush had benefited from the services rendered by the trustee in the performance of all of its duties. She had apparently been paid income from the trust estate by the trustee when she requested payments. The trust instrument directed the trustee to pay her during her life: " . . . the entire net income from said trust estate in such installments as may be found most satisfactory to her. . . ."

■ Irrespective of whether the income which had been paid Mrs. Bush from the trust estate had been expended by her, the fact remains that her estate was better off because of such payments. In other words,

it is our view that her estate benefited by the services rendered by the bank to the trust estate and to Mrs. Bush as life beneficiary and that Mrs. Bush's estate should not be immune from paying for those services simply because her trust income may have been expended by her or may have been co-mingled with assets generated from other sources.

The fact that the ten-year compensation was not payable until ". . . the end of each ten (10) year period . . ." was not in our opinion, a condition precedent to the vesting of the trustee's right of payment but was simply a direction by the settlor of the trust as to the time and manner of payment. A proportionate amount of the ten-year compensation vested in the trustee continuously with the passage of time and as services were rendered to the trust estate. See Union Safe Deposit and Trust Co. v. Dudley, 104 Me. 297, 72 A. 166. Thus at the time of Mrs. Bush's death, 76.39 percent of the ten-year compensation had accrued and was owed even though it was not payable until November 6, 1973.

The interpretation of the ten-year compensation provisions in the trust instrument insisted upon by the appellant would bring about an inequitable and we think unintended result. Even though Mrs. Bush received the benefits of the trustee's services for 76.39 percent of the ten-year period in question, her estate would not be required to pay the proportionate costs of those daily and continuous services which inured to the benefit of the estate as well as to Mrs. Bush. We do not think it was the intention of the settlor of the trust to require the succeeding life beneficiary to bear the entire cost of the ten-year compensation in the event the first life beneficiary died during a ten-year period which was indeed most likely to occur.

It is a general rule that trust estates are to be administered impartially for the benefit of all cestuis que trust alike, if they are in the same class. Where there are successive cestuis que trust, the trustee must act with a fair and impartial attention to the interests of each. First Nat. Bank of Montgomery v. Sheehan, 220 Ala. 524, 126 So. 409.

Appellant's contention presently under consideration is not in accord with the principles relating to the apportionment of expenses between a life beneficiary and a remainderman, or, as in this case, successive life beneficiaries. See Restatement (Second) Trusts, § 233, Comment o; Restatement (Second) Trusts, § 237, Comment e; 3 Scott, Trusts (3rd Ed.) § 233.

In 1939, the Uniform Principal and Income Act with slight variations was adopted in this State. Act No. 572, approved September 19, 1939, General Acts 1939, page 902. The provisions of said Act are now codified as Sections 75–87, Chapter 10, Title 58, Code 1940.

Appellant urges that the provisions of the decree of the trial court here under review run counter to the hereinafter quoted language of Section 86, Title 58, Code of 1940:

"Where the expenses to be paid out of income are of unusual amount, the trustee may distribute them throughout an entire year or part thereof, or throughout a series of years. After such distribution, where the right of the tenant ends during the period, the expenses shall be apportioned between tenant and remainderman on the basis of such distribution. * * *"

We pretermit a consideration of the reason why appellant says that the above quoted language of Section 86, Title 58, operated to prevent the trial court from legally apportioning the ten-year compensation as it did in the decree here reviewed, because this Court has held that our Uniform Principal and Income Act does not apply to "transactions" which were effected before the statute was enacted. Marks

v. Brightwell, 269 Ala. 506, 114 So.2d 268; Toolen v. Amos, 259 Ala. 346, 67 So.2d 8; Dillard v. Gill, 254 Ala. 5, 47 So.2d 203; First Nat. Bank of Mobile v. Wefel, 252 Ala. 212, 40 So.2d 434; First Nat. Bank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170; cf. Linenthal v. Birmingham Trust & Savings Co., 249 Ala. 631, 32 So.2d 368. See Re Warden's Trust, 382 Pa. 311, 115 A.2d 159; 69 A.L.R.2d 1137.

The facts in the *Marks* case, supra, are similar in some important respects to the facts of this case. In both cases, the settlor of the trust died prior to the enactment of the Uniform Principal and Income Act, supra. In the *Marks* case, supra, the life beneficiary died after the enactment of that act as did the first life beneficiary in this case. In the *Marks* case, supra, this Court said: "The Uniform Principal and Income Act does not apply to the instant case because the *transaction* was effected before the statute was enacted." (Emphasis supplied.) We think the language just quoted from the *Marks* case, supra, is equally applicable to the instant case.

We are not concerned on this appeal with the manner in which the trustee bank handled the collection of the ten-year compensation during the lifetime of Mrs. Margaret Gage Bush.

We are concerned on this appeal only with the provisions of the decree of the trial court under attack in this Court. Finding no merit in the assignments of error, the decree of the trial court is due to be affirmed. It is so ordered.

The foregoing opinion was prepared by Thomas S. Lawson, Supernumerary Associate Justice, and adopted by the Court as its opinion.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH, McCALL and JONES, JJ., concur.