381 So.2d 8 (1980)
Gage Bush ENGLUND
v.
The FIRST NATIONAL BANK OF BIRMINGHAM, etc., et al.
The FIRST NATIONAL BANK OF BIRMINGHAM, etc.,
v.
Gage Bush ENGLUND et al.
78-444, 78-484.
Supreme Court of Alabama.
January 11, 1980.
Rehearing Denied March 7, 1980.
*9 Sydney R. Prince, III, George H. McKean, and William C. Barclift, III, of Inge, Twitty, Duffy & Prince, Mobile, for appellant/cross appellee Gage Bush Englund.
Lucien D. Gardner, Jr., George F. Maynard, and E. T. Brown Jr., of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for appellee/cross appellant The First National Bank of Birmingham, etc., et al.
George Young, Birmingham, Guardian Ad Litem, for Alixandra Gage Englund, a minor and Rachael Rutherford Englund, a minor.
FAULKNER, Justice.
These are appeals from a declaratory judgment rendered by the Circuit Court of Jefferson County interpreting a trust provision under the will of Morris W. Bush, and awarding the guardian ad litem a fee of $50,000. We affirm in part, reverse in part, and remand to the trial court.
On December 12, 1929, Morris W. Bush executed his last will and testament, and appointed the American Trader National Bank of Birmingham (now The First National Bank of Birmingham) as executor and trustee. Under the terms of the will, Miss A. L. Williams, Bush's aunt received the net income for her life from one-fourth of the residuary estate, held in trust by the Bank. Bush's wife, Margaret Gage Bush, received the net income for her life from three-fourths of the estate for her support and comfort. In addition, if the trustee were satisfied that the net income from her share of the trust was not sufficient for her "proper support and comfort" it was authorized to pay to her any additional sum or sums out of the principal of said trust "as to it may seem necessary or desirable for such purposes." Upon the death of Mrs. Bush, the will provides that the
". . . trustee shall hold the trust estate in trust for the equal use and benefit of my children living at decease of my said wife. . .
"The Trustee shall hold the share of each child entitled to share in the trust estate upon the decease of my said wife in trust for such child for and during his or her lifetime, and shall pay over to such child, or use and apply for his or her support, education and comfort, the entire net income from his or her share of said trust estate and so much of the principal thereof as to the Trustee may seem necessary or desirable for such purposes;. . . ."
The will further provides that upon the death of a child leaving descendents, those descendants (grandchildren of Morris Bush) shall receive the trust estate in equal shares if they are "of age"if not they receive the net income from the trust, and so much of the principal as the trustee deems necessary or desirable for their support, education, and comfort, until they become "of age."
Mr. Bush died January 24, 1932, survived by his wife, one daughter, Gage, and his aunt, Miss Williams. The trust was established on December 10, 1933, with the Bank as trustee.
Miss Williams died in February, 1932. Mrs. Bush, therefore, became the sole income beneficiary. She died on June 27, 1971, survived by her daughter, Gage Bush Englund, and two granddaughters, Alixandra Gage Englund and Rachael Rutherford Englund.
At the time of Mr. Bush's death, the principal assets of his estate consisted of shares of capital stock of the Alabama By-Products Corporation and Alabama Chemical *10 Products Company. In June, 1971, when Gage became the sole life beneficiary, the market value of the stock in Alabama By-Products and Alabama Chemical was about $10,535,000. On October 16, 1977, the trustee agreed to sell all of the stock in Alabama By-Products and Alabama Chemical to the Drummond Company for $31,090,400. After expenses and taxes, the trustee realized net proceeds of $17,628,513 from the sale.
From the sale of the stock, Gage Englund requested the trustee to allocate $900,000 to income instead of principal and distribute that money to her as income. She made that request under this provision of the will:
"The Trustee hereunder shall have the power to determine whether any money or property coming into its hands shall be treated as a part of the principal of this trust estate, or a part of the income therefrom, and to apportion between such principal and income any loss or expenditure in connection with the trust estate as to it may seem just and equitable."
This request was considered by the Trust Committee of the Bank, who adopted a resolution stating that the proposed allocation was a proper exercise of the trustee's power. They determined that the trustee would treat as income $900,000 in after-tax dollars of the capital gain resulting from the sale, subject to obtaining a declaratory judgment, and instruction from the Circuit Court that the trustee had the allocutory power.
The First National Bank as trustee filed a complaint on June 13, 1978, requesting instructions from the court and a declaratory judgment as to the proper construction of the clause. The trustee contended that this provision gave it authority to allocate trust receipts between income and principal in its absolute discretion. A guardian ad litem was appointed for the minor remaindermen and for any members of the class of remaindermen which might become entitled to any interest in the trust estate.
After an ore tenus hearing, the trial court adjudged that the trust instrument did not authorize the trustee to determine whether trust receipts were to be allocated to income or principal as the trustee might find to be just and equitable, except where there was reasonable doubt as to the character of the receipt in question. The trial court ruled that the proposed allocation of a portion of the capital gain realized on the sale of the stock to income would constitute an abuse of discretion. He awarded attorney's fees to the guardian ad litem in the amount of $50,000.
Both Mrs. Englund and the Bank moved for a new trial and their motions were denied. Mrs. Englund appeals from the entire judgment and denial of her motion for new trial. The Bank as trustee appeals only on the issue of excessive attorney's fees awarded to the guardian ad litem.

I.
On appeal we are asked to determine if the testator intended to give his trustee the discretionary power to determine whether money or property that it obtained should be treated as principal or income, without regard to rules of allocation which would apply in the absence of an expression of settlor's intent, if the proposed allocation was an abuse of discretion, and if the attorney's fee awarded the guardian ad litem was excessive.
Even prior to the passage of the Alabama Principal and Income Act,[1] courts recognized that profits on the sale of shares of stock which comprise a part of the trust corpus are ordinarily to be treated as principal. Sherman v. Sherman, 5 Ohio St.2d 27, 213 N.E.2d 360 (1966); G. Bogert, The Law of Trusts and Trustees, §§ 816, 823 (2d ed. 1962); 3 A. Scott, Law of Trusts, § 233.1 (3rd ed. 1967); see also, First National Bank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170 (1941).
*11 Whether the above trust provision gives the trustee, FNB, the authority to determine which receipts are principal and which are income in its absolute and unfettered discretion or only the authority to make such a determination when the character of the receipt is unclear or doubtful, is the crux of this case.
In American Security & Trust Co. v. Frost, 73 App.D.C. 75, 117 F.2d 283 (D.C. Cir. 1940), the testatrix provided in her will for a residuary trust leaving the income to her children and grandchildren for life and the corpus ultimately to be distributed to her descendants living at the time specified for final distribution. The executors/trustees sold certain securities which were a part of the trust estate, and also received a stock dividend during the estate administration. They decided that a portion of the proceeds of the stock sale and some of the shares received as a stock dividend were income which should be distributed to the life beneficiaries. On appeal, the Circuit Court considered whether Will Clause Eleven authorizing the executors/trustees "to decide finally any question that may arise as to what constitutes income and what principal . . ." empowered the trustees to allocate the funds and stock as income. The court first determined that there was no general intention expressed throughout the will as a whole to allow such a departure from the established rules regarding trusts. The court decided that the trial judge's interpretation of Clause Eleven was too broad:
"To say that Clause 11 empowers the trustees to `decide' contrary to local `rules of construction,' proves too much. In a sense, every item of property is controlled by a `rule of construction.' E. g., bonds received from the original estate would be corpus, the interest on those bonds, income. This is a `rule of construction' derived from the customs of the community. Surely, it would not be said that under the power given in Mrs. Lincoln's will, the trustees could override this rule. And yet if they may override some rules of construction and not others, there would be complicated questions of degree, e. g., whether one rule or another was so certain that the trustees must not overstep it."
There being no genuine question concerning the category in which the fund or stock fell, the court reversed the trial court's decision.
In the present case, an examination of the entire will does not reflect a clearly indicated intention on the part of Morris Bush to violate any rules of construction and give his trustee the power to make the requested allocation. Although he granted the trustee broad powers in other areas, he expressly provided a standard for the invasion of the principal of the trust on behalf of his daughter, Mrs. Englundinvasion to the extent that it seemed necessary or desirable to the trustee for Mrs. Englund's support, education, or comfort. It was estimated that in 1978 Mrs.Englund would receive approximately $1,000,000 in income from the trust and her purpose in requesting the $900,000 allocation was to provide a separate estate for her husband and to repay an interest-free $300,000 debt to the trust. It would have been an abuse of discretion for the trustee to have made the proposed allocation pursuant to the clause allowing invasion for support, education, or comfort as the trustee admitted no such need existed and that it could not and did not rely on this clause. Because of the presence of this clause allowing invasion of the principal pursuant to a fixed standard, we cannot say that the will as a whole reflected a general intention to allow the proposed allocation.
Although the clause in American Security & Trust Co. v. Frost, supra, is worded differently from the provision in Morris Bush's will, it expresses the same grant of authority to the trustee. In both instances the character of the receipt is clear; proceeds from the sale of trust securities are principal. Where proper allocation is not "a matter of honest doubt" the trustees are not authorized to make allocations between principal and income. See, Commissioner of Internal Revenue v. O'Keeffe, 118 F.2d 639, 642 (1st Cir. 1941). The trial judge was *12 correct in his decision that the trust provision in question did not authorize the allocation. We affirm this part of the decree.

II.
Rule 17(d) of the Alabama Rules of Civil Procedure provides that when a guardian ad litem has been appointed, the court must ascertain what is a reasonable fee for his services, and that fee will be taxed as a part of the costs in the action. The matter of the guardian ad litem's fee is within the discretion of the trial court, subject to correction only for abuse of discretion. Commercial Standard Insurance Company v. New Amsterdam Casualty Company, 272 Ala. 357, 362, 131 So.2d 182, 186 (1961).
In awarding the $50,000 fee to the guardian, the court stated that the guardian had expended 175 hours on the case and represented his clients with diligence and expertise "resulting in the preservation of some $900,000 for the interests he has represented," but the guardian ad litem testified himself that he would have served for a lesser amount than set by the court if the remaindermen in this case had been adults seeking his services. We, therefore, reduce the guardian ad litem's fee set by the trial judge and award him the sum of $26,250, which shall be taxed as part of the costs. We reverse the trial judge in the award of the guardian ad litem's fee.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C. J., and JONES, ALMON and SHORES, JJ., concur.
BLOODWORTH, MADDOX, EMBRY and BEATTY, JJ., concur in Section II of the opinion, and dissent in that part of the opinion affirming the trial court.
BEATTY, Justice (concurring in part and dissenting in part):
I disagree with the conclusions of the majority on its interpretation of the language of this instrument.
It is true that profits on the sale of shares of stock are ordinarily to be allocated to principal. See First National Bank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170 (1941); see also Code of 1975, §§ 19-3-271, -272. However, this proposition holds true only if there is no expression of a different intention on the part of the settlor, for it is well settled in this jurisdiction that "[t]he intention of the settlor is the law of the trust and if the nature, subject matter and objects are reasonably ascertainable and the scheme not inconsistent with some established rule of law or public policy, that intention must control and the courts will sustain and give it effect." (Emphasis added.) Stariha v. Hagood, 252 Ala. 158, 40 So.2d 85 (1949); see Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526 (1947).
The provision of the trust instrument under which the trustee sought to allocate the $900,000 to income instead of principal gave to the trustee "the power to determine whether any money or property coming into its hands shall be treated as a part of the principal of the trust estate, or a part of the income therefrom. . . ." The language utilized by the testator in the provision quoted above clearly and unambiguously grants the trustee the authority to use its discretion in determining whether property received by the trust is to be held as principal or distributed as income. The trust document as a whole supports this conclusion, for an examination of that instrument reveals that the settlor sought to vest in the trustee a large amount of discretion in dealing with the trust estate. For example, the trustee was given the power to invest as it saw fit, regardless of any restrictions which would otherwise have been imposed by law. It was also given the power to form a corporation to which it could transfer all trust assets.
The majority's reliance on the provision allowing invasion of the corpus of the trust for the support, education, or comfort of the beneficiary is misplaced under the circumstances of this case. Although that provision would seem to serve as a limitation on the trustee's power to distribute principal, I fail to perceive its relationship *13 to the trustee's power to determine what constitutes principal. The former power comes into being only after the exercise of the latter. As a result, the trustee under the will of Morris W. Bush had the authority to classify the property received by the trust as income. Cases from other jurisdictions support this position. See, e. g., Sherman v. Sherman, 5 Ohio St.2d 27, 213 N.E.2d 360 (1966); Hopkins v. Cleveland Trust Co., 120 N.E.2d 457 (Ohio App. 1954); Dumaine v. Dumaine, 301 Mass. 214, 16 N.E.2d 625 (1938).
However, I agree with the majority that the trial court abused its discretion in awarding the guardian ad litem a fee of $50,000. The lower court found that the guardian had expended 175 hours on the case; on an hourly basis, then, the fee awarded comes to $285.71 per hour. This award is clearly disproportionate when viewed in the light of the guardian's own testimony that he would have set a rate of $75.00 per hour if the remaindermen in this case had been adults seeking his services, rather than infants for whom he was appointed. Assuming arguendo that the professional responsibility inherent in defending the interests of minors is weightier than that which attends the representation of adults, the legal issue in this casethe proper construction of a clause in a will was the same regardless of whether the client was an adult or a child. The decision of the trial court was ironic in its effect, for had the remaindermen here been adults they could have employed the very attorney who was appointed for them for roughly one-fourth the fee that was awarded. Obviously the nature, risks and complexities of some cases call for higher fees than others. This is not one of those in the former category, however. Therefore, a reduction in the fee to be allowed is in order.
BLOODWORTH, MADDOX and EMBRY, JJ., concur.
NOTES
[1] Code 1975, §§ 19-3-271 and 272. The controlling provisions of the Alabama Uniform Principal and Income Act, are not applicable, having been enacted after the death of the testator. See, Corretti v. First National of Birmingham, 290 Ala. 280, 276 So.2d 141 (1973).