ADAMS, Justice.
The sole issue raised in this appeal is whether the trial court erred in determining that the gain realized through the sale of stock in a trust, that sale being an involuntary conversion occurring as the result of a “leveraged buyout,” was not gain from the “sale or disposition” of trust stock within the meaning of that phrase as used in the trust instrument and therefore was not “income” to the trust.
In 1970, M.P. McLean established a trust for the benefit of Roscoe McMillan and his wife, Hannah McMillan. The income received from the trust was to be distributed to the McMillans; however, upon the death of both of them, the corpus of the trust was to revert to McLean or to his heirs or assigns. The corpus of the trust consisted of 1,388 shares of R.J. Reynolds Tobacco Company $2.25 convertible preferred stock. Over the years, the McMillans received from the trust a monthly income of approximately $250 to $375. The trust provided, in part:
“1.1 Establishment of Trust. In accordance with the terms and provisions herein, there is hereby created and established a trust (herein referred to as the ‘Trust’), the income beneficiary of which is ROSCOE D. McMILLAN of Red Springs, North Carolina, and if survived by HANNAH McMILLAN, wife of Roscoe D. McMillan, the said HANNAH McMILLAN shall be income beneficiary (both of said beneficiaries being herein referred to as the ‘Beneficiary’).
“2.1 Powers, Rights and/or Duties....
“(5) To apportion between principal and income any loss or expenditure in connection with the Trust or the administration of the Trust in such manner as may be just and equitable, circumstances considered; 'provided, however, that all realized appreciation in the value of stock, bonds, or other securities or property resulting from the sale or disposition thereof shall be considered as income and *467 not as principal. [Emphasis supplied.]
“3.1 During Life of Named Beneficiary. The Trust shall exist for and during the term or period of the natural life of the said Roscoe D. McMillan, and, if survived by the said Hannah McMillan, said Trust shall continue during her life.
“3.2 Termination of Trust. The Trust shall terminate upon the death of Roscoe D. McMillan, unless survived by Hánnah McMillan, in which event said trust shall terminate upon the death of Hannah McMillan.
“4.1 The Trustee shall apply and distribute the income and principal of the Trust Estate as follows:
“(a) Income. The entire net income of the Trust remaining after payment of all debts and charges of the Trust chargeable against income shall be paid to the Beneficiary for a period or term of his natural life, said net income to be payable monthly in as nearly equal amounts as practicable, with any income not so distributed on December 31st of each year being paid to the Beneficiary on or before the following 10th day of January.
“(b) Corpus. Upon the termination of the Trust herein established, the principal shall thereupon revert to the Donor, and shall be paid, distributed, transferred, conveyed, and assigned by the Trustee to Donor if he is then living or as part of the residuary estate of Donor, if he not be living.
“5.3 Definitions. As used herein, the term ‘Net Income’ shall mean the gross income of the Trust Estate herein established, including gain realized on the disposition of any corpus of the Trust, less taxes chargeable to and expenses of all other items properly chargeable against the income of the Trust and Trust Estate, either by law or by the terms of this Trust Indenture.”
At the time of the creation of the trust, the value of the corpus was approximately $55,000; however, due to stock splits, conversions and mergers, the value of the stock increased to approximately $983,000. The treatment of approximately $901,000 as taxable gain following the forced sale of the entire corpus of the trust in connection with a leveraged buyout is the central issue before us.
The trial judge in this case held that the intention of McLean as expressed in the trust instrument was not to interpret such gain on the sale of the stock as income, but, rather, that any such increase would be considered principal. McLean contends that § 19-3-271, Code of Alabama (1975), controls. That section states:
“This article shall govern the ascertainment of income and principal, and the apportionment of receipts and expenses between tenants and remaindermen, in all cases where a principal has been established with or, unless otherwise stated in this article, without the interposition of a trust; except, that in the establishment of the principal, provision may be made touching all matters covered by this article, and the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other persons to do so, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this article.”
We also note § 19-3-272(b), which states:
“(b) All receipts of money or other property paid or delivered as the consideration for the sale or other transfer, not a leasing or letting, of property forming a part of the principal, or as a repayment of loans, or as compensation for property tortiously damaged, or in liquidation of the assets of a corporation, or as the proceeds of property taken on eminent domain proceedings where separate awards to tenant and remainderman are not made, or as proceeds of insurance upon property forming a part of the principal except where such insurance has been issued for the benefit of either tenant or remainderman alone, or otherwise as a refund or replacement or change in form of principal, shall be deemed principal unless otherwise expressly provided *468 in this article. Any profit or loss resulting upon any change in form of principal shall enure to or fall upon principal.”
This Court has previously noted:
“Even prior to the passage of the Alabama Principal and Income Act, courts recognized that profits on the sale of shares of stock which comprise a part of the trust corpus are ordinarily to be treated as principal. Sherman v. Sherman, 5 Ohio St.2d 27, 213 N.E.2d 360 (1960); G. Bogert, The Law of Trusts and Trustees, §§ 816, 23 (2d ed. 1962); 3 A. Scott, Law of Trusts, § 233.1 (3rd ed. 1967); see also, First National Bank of Tuskaloosa v. Hill, 421 [241] Ala. 606, 4 So.2d 170 (1941).”
Englund v. First Nat’l Bank of Birmingham, 381 So.2d 8, 10 (Ala.1980). In En-glund, a clause in the trust instrument authorized the trustee “to determine whether any money or property coming into its hands shall be treated as a part of the principal of [the] trust estate, or a part of the income therefrom.” Id. at 10. The Court held that the clause gave such authority to the trustee only where “the character of the receipt [of such money or property was] unclear or doubtful.” Id. at 11. In making a determination in the case that any profits from sales of shares would be treated as principal instead of income, the Court held:
“In the present case, an examination of the entire will does not reflect a clearly indicated intention on the part of [the testator] to violate any rules of construction and give his trustee the power to make the requested allocation.”
Id. at 11.
In the case at bar, McLean contends that leveraged buyouts were not within the contemplation of the parties when the trust was created in 1970. Furthermore, he argues that the trustee was forced to sell the RJR shares because he was given three options with regard to the stock and he found that option the most viable one.[1] Because the decision to sell was not completely voluntary on the part of the trustee, and, thus, McLean argues, was similar to an involuntary conversion, he contends that the trial court correctly determined that the transaction did not fall within the scope of the phrase “sale or other disposition” in the trust instrument. We agree. Neither McLean nor any other investor could possibly have anticipated in 1970 the leveraged buyouts that occurred in the 1980’s.
It is not disputed that McLean, by creating the trust, intended to provide a modest monthly income to the beneficiaries for life. Even Mrs. McMillan acknowledges that she, as income beneficiary of the trust, should not receive this windfall.[2] To give the trust provisions their literal meaning would result in 90% of the gain on the transaction being treated as income. None of the parties intended this result. The trustee summarized the purpose of the trust in this description submitted to comply with Reg. 9-7(2) of the Comptroller of the Currency:
“This trust created by Malcom P. McLean with 1388 shs. R.J. Reynolds Tobacco Company $2.25 convertible preferred stock to provide Dr. Roscoe D. McMillan and Hannah McMillan, aged and retired friends living in Red Springs, North Carolina, as beneficiaries, a monthly income for life totalling $300.00. On death of both, stock returns to Mr. McLean. Full authority to retain stock without liability.”
We find, therefore, that the term “sale or other disposition” does not include an involuntary conversion of the trust corpus under these facts. The trustee had no choice but to convert the trust corpus either to cash or to part cash and part nonequity securities. Under these circumstances, the trial court appropriately treated the gain as principal and not as income. To hold otherwise would distort the intent of the settlor, whose intention from the outset was clear: to provide a modest monthly income for the *469 beneficiaries for their lives, and, at the death of the survivor of them, to have the corpus revert to the settlor.
For the foregoing reasons, this judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., recused.

. All three options available to the trustee as a result of the leveraged buyout converted the stocks to cash or a combination of cash and nonequity securities.

. This appeal resulted because Mrs. McMillan is concerned with the tax consequences should the Internal Revenue Service read the clause in the trust instrument literally.